MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2019 ME 90
Docket:      Cum-18-58
Argued:      September 11, 2018
Decided:     June 6, 2019

Panel:       SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.
Majority:    SAUFLEY, C.J., and MEAD, GORMAN, and HUMPHREY, JJ.
Dissent:     HJELM, ALEXANDER, and JABAR, JJ.

## PACKGEN, INC.

v.

## BERNSTEIN, SHUR, SAWYER & NELSON, P.A.

HUMPHREY, J.

[¶1]   In Maine, with exceptions not applicable to this appeal, the Legislature has spoken—a civil action against an attorney for professional negligence, malpractice, or breach of contract for legal services "shall be commenced within 6 years after the cause of action accrues," 14 M.R.S. § 752 (2018),[1] and the cause of action accrues on "the date of the act or omission giving rise to the injury, not from the discovery of the [attorney] malpractice, negligence or breach of contract." 14 M.R.S. § 753-B (2018).[2] The question we

---

[1] Section 752 identifies those exceptions as "actions on a judgment or decree of any court of record of the United States, or of any state, or of a justice of the peace in this State, and except as otherwise specially provided." 14 M.R.S. § 752 (2018).

[2] Section 753-B provides that only in actions alleging professional negligence "in the rendering of a real estate title opinion" and "in the drafting of a last will and testament that has been offered for

2

address in this appeal is whether the court-made doctrines of continuing representation and continuing negligence should apply in the determination of the date on which a cause of action for legal malpractice accrues under section 753-B.

[¶2]  Packgen, Inc., appeals from a judgment entered by the Superior Court (Cumberland County, *Warren, J.*) granting the motion of Bernstein, Shur, Sawyer & Nelson, P.A. (Bernstein Shur), to dismiss Packgen's complaint for legal malpractice because Packgen's claim is barred by Maine's six-year statutes of limitations for civil actions, 14 M.R.S. § 752, and attorney malpractice actions, 14 M.R.S. § 753-B.  Packgen argues that its claim is not barred because the doctrines of continuing representation[3] and continuing negligence[4] operate to bring the date of the act or omission "giving rise to [its] injury"—Bernstein Shur's failure to serve a proper notice of claim or file a defective-products

---

probate," the limitation period commences upon the discovery of the cause of action.  14 M.R.S. § 753-B(2)-(3) (2018).

[3]  "The premise [of the doctrine of continuing representation] is that the cause of action in an attorney malpractice case should not accrue until the attorney's representation concerning a particular transaction is terminated."  3 Ronald E. Mallen, *Legal Malpractice* § 23:44 at 543 (2019 ed. 2019) (quotation marks omitted).

[4]  Under a continuing negligence theory, the statute of limitations period does "not begin to run until the date of the last act of negligence"—the date of last injury.  *See Baker v. Farrand*, 2011 ME 91, ¶ 20, 26 A.3d 806; *see also Dickey v. Vermette*, 2008 ME 179, ¶ 9, 960 A.2d 1178; 3 J.D. Lee & Barry A. Lindahl, *Modern Tort Law: Liability and Litigation* § 25:123, at 25-242 to -243 (2d ed. 2002) ("Under the continuing tort doctrine, if the negligence involves a continuing tort involving a continuing injury, the statute of limitations does not begin to run until the wrong terminates.").

complaint—within the statute of limitations. 14 M.R.S. § 753-B(1). In the context of actions for attorney malpractice, we decline to adopt either doctrine and affirm the judgment dismissing the complaint as untimely pursuant to 14 M.R.S. §§ 752, 753-B.

## I. BACKGROUND

[¶3] The following facts are drawn from Packgen's amended complaint and from documents attached to it whose authenticity is not challenged. *See Andrews v. Sheepscot Island Co.*, 2016 ME 68, ¶ 8, 138 A.3d 1197; *see also Moody v. State Liquor & Lottery Comm'n*, 2004 ME 20, ¶ 11, 843 A.2d 43. We view the facts alleged in the complaint as if they were admitted. *See Andrews*, 2016 ME 68, ¶ 8, 138 A.3d 1197.

A.     Underlying Federal Case—*Packgen v. Covalence*

[¶4]     In 2008, Packgen retained Bernstein Shur to prosecute a defective-products claim against Covalence Specialty Coatings, LLC, and Berry Plastics Corporation.

[¶5]   On May 29, 2008, Bernstein Shur sent a letter to Covalence "to provide notice of [Packgen's] claim against Covalence."[5]   Although the letter

---

[5] Packgen's amended complaint, from which we draw these facts, alleges only that Bernstein Shur sent the letter to Covalence. It is unclear from the complaint whether Bernstein Shur also sent the letter to Berry Plastics.

4

was signed by a Bernstein Shur attorney, it did not set forth the cause of action *under oath* as is required by 14 M.R.S. § 1602-B(5) (2018). Bernstein Shur did not notice the missing oath, nor did it inform Packgen that a "proper notice of claim [was required] to start the accrual of prejudgment interest" or warn Packgen of "the adverse consequences of failing to serve such a notice" or the need to "promptly file suit . . . in order to protect Packgen's prejudgment interest rights." In the three years that followed, Bernstein Shur "made no attempt to serve a valid notice of claim that complied with section 1602-B," "failed to file suit or otherwise diligently pursue the case," and "failed to keep Packgen adequately informed about the status of its case."

[¶6] In 2011, Packgen retained new counsel and sued Covalence and Berry Plastics in the United States District Court for the District of Maine. On November 13, 2015, a jury rendered a verdict in favor of Packgen in the amount of $7,206,646.30, plus interest as allowed by law. Packgen filed an amended motion to alter or amend the judgment to allow post-judgment interest to accrue from May 29, 2008, the date that Covalence purportedly received Bernstein Shur's letter on behalf of Packgen.

[¶7] On December 11, 2015, while the parties were awaiting the court's decision on the amended motion, Packgen and Bernstein Shur "entered into a

tolling agreement pursuant to which any and all legal defenses based on the passage of time and any limitations periods applicable to any claim or cause of action Packgen may possess against [Bernstein Shur] arising out of [Bernstein Shur's] representation of Packgen on claims against [Covalence] and other responsible parties . . . were tolled and would be deemed suspended from running as of December 11, 2015."

[¶8]  On March 7, 2016, the federal court (*Torresen, J.*) denied Packgen's motion to alter or amend the judgment because Bernstein Shur's letter to Covalence failed to comply with the oath requirement in 14 M.R.S. § 1602-B(5) and therefore did not constitute a valid notice of claim.  As a result, Packgen was permitted to recover prejudgment interest dating only from the filing of the complaint in 2011 rather than from May 29, 2008, the date on which Bernstein Shur served the unsworn notice.

B.     Packgen's Claim Against Bernstein Shur

[¶9]  On May 23, 2017, Packgen filed a complaint against Bernstein Shur in the Superior Court alleging that the law firm's failure to send a notice that complied with the requirements of section 1602-B caused Packgen to sustain an economic loss in the amount of $2,510,293.84—the difference between the prejudgment interest actually awarded by the federal court and the

6

prejudgment interest that would have been awarded but for Bernstein Shur's negligence.

[¶10] Bernstein Shur responded with a motion to dismiss the complaint on the grounds that Packgen's claims were barred by the six-year statutes of limitations for civil actions, 14 M.R.S. § 752, and attorney malpractice actions, 14 M.R.S. § 753-B. Bernstein Shur argued that the act giving rise to Packgen's alleged injury—the basis for Packgen's cause of action against it—occurred on May 29, 2008, the date the defective notice was sent to Covalence, and therefore the statute of limitations expired on May 29, 2014, three years before Packgen filed its complaint.

[¶11] Packgen then filed an amended complaint, asserting that the December 2015 tolling agreement suspended the statute of limitations. Bernstein Shur countered in an amended motion to dismiss that the tolling agreement only saved claims that had not already expired. Bernstein Shur argued that, because the letter was sent on May 29, 2008, the suit alleging negligence in that letter was barred by the statute of limitations regardless of the tolling agreement, which only preserved claims accruing after December 11, 2009, six years prior to the signing of the agreement.

[¶12] The court concluded that section 753-B(1) barred Packgen's claim and granted Bernstein Shur's motion to dismiss the amended complaint "as to any claim for loss of prejudgment interest prior to the filing of [Packgen's] federal complaint."

[¶13] The court noted that Packgen "appear[ed] to argue that its claim is not limited to the loss of prejudgment interest because of [Bernstein Shur's] failure to diligently pursue the case and keep Packgen informed of its status constituted legal malpractice 'which caused additional damage to Packgen.' Packgen's amended complaint, however, in no way specifies what additional damage or losses were allegedly caused by [Bernstein Shur's] lack of diligence." (Citation omitted.) The court granted Packgen leave to file a motion to file an amended complaint if it alleged that Bernstein Shur committed professional negligence on or after December 11, 2009, that caused Packgen to incur financial losses other than the loss of prejudgment interest. Packgen did not file such a motion, and the court entered its final judgment dismissing the action on January 24, 2018.

[¶14] The court rejected Packgen's assertions that the doctrines of continuing representation and continuing negligence operate to save its claim from Bernstein Shur's statute of limitations defense because it determined that

such a result would contravene the Legislature's intent in rejecting the discovery rule and adopting the six year statute of limitations in 14 M.R.S. § 753-B(1). Packgen timely appealed. M.R. App. P. 2B(c).

## II. DISCUSSION

[¶15] Packgen argues that the court erred when it dismissed its claim as untimely because the court limited its analysis to Bernstein Shur's act of sending the defective notice of claim to Covalence on May 29, 2008. It is Packgen's position that Bernstein Shur committed actionable, negligent omissions each day that it failed to send a valid notice or take other action in the case after December 11, 2009.[6]

A.      Standard of Review

[¶16] "A motion to dismiss tests the legal sufficiency of the complaint," *In re Wage Payment Litig.*, 2000 ME 162, ¶ 3, 759 A.2d 217 (quotation marks omitted), the material allegations of which "must be taken as admitted," *Moody,* 2004 ME 20, ¶ 7, 843 A.2d 43 (quotation marks omitted); *see also Ramsey v. Baxter Title Co.*, 2012 ME 113, ¶ 2, 54 A.3d 710. When reviewing the grant of a motion to dismiss, "we examine the complaint in the light most favorable to the

---

[6]     Packgen asserts that its claim against Bernstein Shur for negligent omissions after December 11, 2009, was preserved by the parties' December 11, 2015, tolling agreement.

plaintiff to determine whether it sets forth elements of a cause of action or alleges facts that would entitle the plaintiff to relief pursuant to some legal theory." *In re Wage Payment Litig.*, 2000 ME 162, ¶ 3, 759 A.2d 217; *see also McCormick v. Crane*, 2012 ME 20, ¶ 5, 37 A.3d 295. A dismissal is only proper "when it appears beyond doubt that [the] plaintiff is entitled to no relief under any set of facts that [it] might prove in support of [its] claim." *Moody,* 2004 ME 20, ¶ 7, 843 A.2d 43 (quotation marks omitted).

B.      Statute of Limitations

[¶17]   In this case, Packgen challenges the court's interpretation and application of the statute of limitations in attorney malpractice cases. "Whether a claim is barred by the statute of limitations is a legal question subject to de novo review." *Estate of Weatherbee*, 2014 ME 73, ¶ 14, 93 A.3d 248. "The statute of limitations is an affirmative defense. Unless it is clear on the face of the complaint that the action is barred by the relevant statute of limitations, dismissal on limitations grounds is improper." *Jackson v. Borkowski*, 627 A.2d 1010, 1013 (Me. 1993) (citation omitted).

[¶18]   In a legal negligence or malpractice action, the six-year statute of limitations begins to run from the date the cause of action accrues, 14 M.R.S. § 752—that is, "from the date of the act or omission giving rise to the injury, not

from the discovery of the [attorney] malpractice, negligence or breach of contract," *id*. § 753-B(1).

[¶19]  In general, "[w]e construe statutes of limitations narrowly."  *White v. McTeague, Higbee, Case, Cohen, Whitney & Toker, P.A.*, 2002 ME 160, ¶ 8, 809 A.2d 622.  "When a statute already defines accrual . . . we are not free to re-define the term," *Musk v. Nelson*, 647 A.2d 1198, 1201 (Me. 1994); however, "[a]bsent legislative direction, the decision of when a cause of action accrues is a judicial function," *White,* 2002 ME 160, ¶ 7, 809 A.2d 622.

[¶20]  "In interpreting a statute, our single goal is to give effect to the Legislature's intent in enacting the statute."  *Dickau v. Vt. Mut. Ins. Co.*, 2014 ME 158, ¶ 19, 107 A.3d 621.  In general, a statute of limitations "should be construed strictly in favor of the bar which it was intended to create."  *Harkness v. Fitzgerald*, 1997 ME 207, ¶ 5, 701 A.2d 370 (quotation marks omitted); *see also Dickau*, 2014 ME 158, ¶ 21, 107 A.3d 621 ("Among [the principles of statutory construction] is the principle that we must interpret the plain language by taking into account the subject matter and purposes of the statute, and the consequences of a particular interpretation.").

[¶21]  To determine that legislative intent, "we first look to the plain language of the provisions to determine their meaning."  *Mainetoday Media, Inc.*

*v. State*, 2013 ME 100, ¶ 6, 82 A.3d 104. "We seek to discern from the plain language of the statute the real purpose of the legislation, avoiding results that are absurd, inconsistent, unreasonable, or illogical. If the statutory language is clear and unambiguous, we construe the statute in accordance with its plain meaning in the context of the whole statutory scheme." *Harrington v. State,* 2014 ME 88, ¶ 5, 96 A.3d 696 (alteration, citation, and quotation marks omitted). "If the plain language of a statute is ambiguous—that is, susceptible of different meanings—we will then go on to consider the statute's meaning in light of its legislative history and other indicia of legislative intent." *Mainetoday Media*, Inc., 2013 ME 100, ¶ 6, 82 A.3d 104.

1.    The Occurrence Rule

[¶22]  Title 14 M.R.S. § 753-B provides the accrual date for actions against attorneys as follows:

> In actions alleging professional negligence, malpractice, or breach of contract for legal service by a licensed attorney, the statute of limitations starts to run from the date of the act or omission giving rise to the injury, not from the discovery of the malpractice, negligence or breach of contract, except as provided in this section or as the statute of limitations may be suspended by other laws.

By its plain language, section 753-B unambiguously divests itself of the discovery rule in attorney malpractice cases in all but two circumstances not applicable here[7] and, instead, adopts an occurrence rule.  14 M.R.S. § 753-B.

[¶23]  Under the discovery rule, the statute of limitations is tolled until the injured party knows or should know of the harm caused.  *See* 3 Ronald E. Mallen, *Legal Malpractice* § 23:54 at 604 (2019 ed. 2019).  In contrast, under the occurrence rule, the statute of limitations begins to run on the date of the "occurrence of the essential facts that form the cause of action"—i.e., the date of the *act or omission* giving rise to the injury.  *See id*. § 23:22 at 446-50.  As a practical matter, because the clock begins to run on the date that the act or omission giving rise to the injury occurred, under the occurrence rule, the statute of limitations could begin to run before an injured party becomes aware of its injury.  *Id.* § 23:22 at 454.

[¶24]  Packgen argues that our analysis regarding negligence or malpractice actions against attorneys should not be limited to the strictures of the occurrence rule and urges us to adopt the doctrines of continuing representation and continuing negligence, which would save its claim against Bernstein Shur from dismissal resulting from the statute of limitations.

---

[7] *See supra* n.2.

2.      The Continuing Representation Doctrine

[¶25]   The doctrine of continuing representation has been adopted in some states.  In those states, the doctrine is applied "only where there are clear indicia of an ongoing, continuous, developing and dependent relationship between the client and the attorney."  *Smith v. Stacy*, 482 S.E.2d 115, 121 (W. Va. 1996) (quotation marks omitted).  This doctrine is "designed to toll the statute of limitations during the continuation of the attorney/client relationship . . . until the professional relationship terminates with respect to the matter underlying the malpractice action."  *Id.* at 120.  The continuing representation doctrine was originally used in medical malpractice cases and applied in legal malpractice litigation as "a direct reaction to the illogical requirement of the occurrence rule, which compels clients to sue their attorneys though the relationship continues, and there has not been and may never be any injury."  3 Ronald E. Mallen, *Legal Malpractice* § 23:44 at 543.  Relying on this reasoning, Packgen asserts that we should adopt the continuing representation doctrine in legal malpractice cases and claims it had an ongoing, continuous, developing, and dependent relationship with Bernstein Shur.

[¶26]   Although we have not had the opportunity to determine whether the continuing representation doctrine has a place in attorney malpractice

litigation,[8] we have had occasion to review the use of this doctrine in the context of medical malpractice claims. *See Dickey v. Vermette*, 2008 ME 179, 960 A.2d 1178. In *Dickey*, we rejected the application of the *continuing course of treatment doctrine*—as it is called in medical malpractice litigation— pursuant to which the statute of limitations would not begin to run until the end of the doctor-patient relationship. *Id.* ¶ 7. We observed that, when the Legislature set "a three-year period of limitations, declaring that the cause of action accrues on the date of the act or omission giving rise to the injury and carving out a specific exception for foreign objects, the Legislature effectively declined to adopt the continuing course of treatment doctrine." *Id.* (quotation marks omitted). Applying the continuous course of treatment doctrine to save the plaintiff's claim would have required "imposing a judicially-created exception that is contrary to the plain meaning of [the statute of limitations]." *Id.*; *see also Dasha v. Me. Med. Ctr.*, 665 A.2d 993, 996 (Me. 1995).

[¶27] The legislative history of section 753-B similarly proscribes our ability to define when a legal negligence or malpractice cause of action accrues.

---

[8] In *Nevin v. Union Tr. Co.*, 1999 ME 47, ¶ 37, 726 A.2d 694, we declined to determine whether the continuing representation doctrine could ever apply in legal malpractice cases because the plaintiffs "stipulated away any such claims by waiving claims regarding any representation" in the unexpired limitations period.

The Legislature clearly defined the accrual date for actions for legal malpractice when it first adopted the occurrence rule, *see* P.L. 1985, ch. 804, § 2 (effective Aug. 1, 1988) (codified at 14 M.R.S. § 753-A (Supp. 1988)).[9] This change to the legal malpractice statute of limitations was part of a substantial overhaul to the laws relating to professional liability generally, and was primarily an effort to respond to the high cost of liability insurance for medical practitioners. *See* L.D. 2400 (112th Legis. 1986). The occurrence rule "comports with a legislative intent to limit stale claims against attorneys" and the "policy of repose mandated by the Legislature." *White*, 2002 ME 160, ¶ 8, 809 A.2d 622. When the Legislature enacted the statute of limitations for actions involving attorneys, it articulated that this law "expands the current 'discovery rule' in actions . . . by extending it to malpractice actions involving wills as well as title searches. *The 'discovery rule' will not apply in any other attorney malpractice actions.*" L.D. 2400, Statement of Fact (112th Legis. 1986) (emphasis added); *see also Nevin v. Union Tr. Co.,* 1999 ME 47, ¶¶ 31, 34-35, 726 A.2d 694. This Legislative action reveals an intent not only to provide repose, but to start the statutory clock at the earliest possible moment—when the act or omission

---

[9] Title 14 M.R.S. § 753-A has since been repealed and replaced by 14 M.R.S. § 753-B (2018). *See* P.L. 2001, ch. 114, §§ 1-2 (effective Sept. 21, 2001).

causing the injury occurs. The Legislature could have chosen to adopt a rule that triggered the running of the statute of limitations when the client became aware of his or her injury, but it did not. Instead, it determined that the limitations period begins when the act or omission giving rise to the cause of action occurs. 14 M.R.S. § 753-B. This suggests that the Legislature intended for legal malpractice claims to begin and be resolved without delay.

[¶28] Further, as reasoned in *Dickey*, and correctly recognized by the trial court in this case, applying the doctrine of continuing representation in attorney negligence or malpractice actions would be tantamount to resurrecting the discovery rule, which is clearly foreclosed by the plain language of section 753-B. 2008 ME 179, ¶ 7, 960 A.2d 1178. Adoption of the continuing representation doctrine would defer accrual of a cause of action until the attorney-client relationship is terminated, potentially tolling the statute of limitations through years of trial and appellate review, which would contradict the "policy of repose mandated by the Legislature." *White*, 2002 ME 160, ¶ 8, 809 A.2d 622.

[¶29] The Legislature has provided a specific six-year period of limitations subject to two narrow exceptions. 14 M.R.S. § 753-B(2)-(3). We are not free to carve out additional exceptions to section 753-B and therefore do

not do so here. *See Nevin*, 1999 ME 47, ¶ 34, 726 A.2d 694. ("[W]hen the Legislature provides for enumerated exceptions to its definition, those exceptions implicitly deny the availability of any other." (alteration and quotation marks omitted)). While it may seem uncomfortable to potentially require that a client, in order to preserve its claim, sue its attorney before the relationship has been severed, the Legislature clearly determined that the limitations period in legal malpractice cases begins to run on the date of the act or omission giving rise to the injury, not the date of the termination of the attorney-client relationship.

C.    Continuing Negligence Doctrine

[¶30]    Alternatively, Packgen urges that we apply the continuing negligence doctrine to its legal malpractice claim as we applied the doctrine to a medical malpractice claim in *Baker v. Farrand*, 2011 ME 91, ¶ 29, 26 A.3d 806. Under the continuing negligent treatment doctrine, the limitations period does not begin to run "until the date of the last act of negligence." *Id.* ¶ 20. In *Baker*, we examined the plain language of 24 M.R.S. § 2902 (2018)—the medical malpractice statute of limitations—and relied, in part, on the rule of statutory

18

construction in 1 M.R.S. § 71(9) (2018),[10] to determine that it was consonant with the plain meaning of the statute "to define the term 'act or omission' *as used in section 2902* as referring to either a single act or omission, or a series of related acts or omissions that proximately cause a harm." 2011 ME 91, ¶¶ 27-28, 26 A.3d 806 (emphasis added). As a result, we held,

> pursuant to section 2902, a plaintiff may bring a single action alleging continuing negligent treatment that arises from two or more related acts or omissions by a single health care provider or practitioner where each act or omission deviated from the applicable standard of care and, to at least some demonstrable degree, proximately caused the harm complained of, as long as at least one of the alleged negligent acts or omissions occurred within three years of the notice of claim.

*Id.* ¶ 29.

[¶31] Packgen urges that this reasoning in *Baker* should also be applied to claims of legal malpractice under section 753-B because Bernstein Shur's ongoing failure to send a proper notice of claim, in combination with its failure to file suit and adequately advise Packgen up to the date of the termination of its representation in 2011, proximately caused the loss of the full amount of prejudgment interest to which Packgen was entitled. *See id.* ¶¶ 24-25. In other words, Packgen asserts that its cause of action was preserved because the

---

[10] "Words of the singular number may include the plural; and words of the plural number may include the singular." 1 M.R.S. § 71(9) (2018).

limitations period did not begin to run until Bernstein Shur allegedly committed its last negligent omission. However, *Baker* does not control the application of the continuing negligence doctrine in legal malpractice actions.

[¶32] In *Baker*, a primary care physician performed six annual tests on a patient's prostate, only two of which fell within the applicable statute of limitations. *Id.* ¶ 3-4. The physician failed to refer the patient to a specialist after three of the tests, even though the results were abnormal and the need for further testing was indicated. *Id.* As a result, the patient's prostate cancer was not detected until after it spread considerably and his treatment options were substantially limited. *Id.* Because the harm was caused by a continuing course of negligent treatment, the patient was permitted to bring a cause of action on the basis of each of the occasions on which the physician failed to adhere to the standard of care, even though only two of those acts or omissions fell within the limitations period. *Id*. ¶¶ 3, 29.

[¶33] Unlike the continuing course of negligent treatment in *Baker*, the negligence Packgen alleges arises from a single act: Bernstein Shur's failure to send a proper notice of claim on May 29, 2008. Here, the negligent action was singular—an isolated mistake severable from the remainder of Bernstein Shur's representation of Packgen—and substantially dissimilar from the

ongoing treatment and annual testing in *Baker*. We understand Packgen's argument that Bernstein Shur committed a new negligent omission each day it failed to provide a proper notice of claim or seek another remedy after May 29, 2008; however, we were clear in *Baker* that where it is "reasonably probable that one act or omission in a series of acts or omissions was the *sole* proximate cause of the injury complained of, a cause of action would accrue from the date of that act or omission, and not from the dates of any subsequent acts or omissions." *Id*. ¶ 24. In this case, it is reasonably probable that the harm Packgen complains of occurred as a result of Bernstein Shur's alleged failure to meet the oath requirements for the notice of claim on May 29, 2008. As such, the continuing negligence doctrine is inappropriate in this case.

[¶34] Moreover, the applicability of the continuing negligence doctrine to the medical malpractice statute of limitations was based firmly "on the language and authority of the Health Security Act," to which there are no analogous provisions in the attorney malpractice context. *Id.* ¶ 30. In *Baker*, we anchored our holding on two definitions particular to the Health Security Act: "action for professional negligence" and "professional negligence." *Id*. ¶ 22 (citing 24 M.R.S. § 2502(6)-(7) (2018)). These definitions provided the basis for our holding that the act or omission that triggers the statute of limitations

could be a combination of several related acts or omissions, including acts or omissions outside the statute of limitations. The definitions relevant to title 24 specifically authorize the use of multiple acts or omissions to make out a claim of professional negligence; therefore, it was logical for us to conclude in the medical malpractice context that the precipitating event for a medical malpractice claim could be a series of related events, the combination of which proximately caused the patient's injury. *Id.*; *see also* 24 M.R.S. § 2502(6)-(7). This same logic does not apply to claims for attorney malpractice pursuant to 14 M.R.S. § 753-B.

[¶35] There are no congruent definitions in title 14, generally, or in chapter 205, specifically. Without similar authorizing language on which to draw, we are unable to conclude that the continuing negligence doctrine is applicable to claims for legal malpractice. Moreover, considering the particular language and history of section 753-B, it is clear that the application of the continuing negligence doctrine is foreclosed by the Legislature's intent to provide timely repose to claims against attorneys, as discussed above. *White*, 2002 ME 160, ¶ 8, 809 A.2d 622. While it can be said that section 753-B, like any statute of limitations, provides an arbitrary cutoff after which a client's

claim against his attorney is no longer viable, this was a deliberate choice the Legislature made, and we must defer to it.

## III. CONCLUSION

[¶36] Given the legislative history underpinning the adoption of the occurrence rule in section 752, the plain language of section 753-B regarding actions against attorneys, and the strict construction we apply to statutes of limitations, we conclude that the Legislature intended to limit the accrual of a cause of action for attorney negligence or malpractice to the "act or omission giving rise to the injury"—that is, the attorney's singular act or omission that proximately caused the harm to the client, 14 M.R.S. § 753-B, and not to the attorney's ongoing failure to correct that singular act or omission. In this case, the act giving rise to Packgen's alleged injury occurred on May 29, 2008, and Packgen's claim expired on May 29, 2014, six years after the service of the defective notice letter, and it is now time barred, 14 M.R.S. §§ 752, 753-B. We must effectuate the Legislature's language and we may not hold otherwise. *See Myrick v. James*, 444 A.2d 987, 992 (Me. 1982) ("That which we may not do is to change such a rule or policy once the Legislature has specifically taken that rule or policy out of the arena of the judicial prerogative . . . .").

The entry is:

Judgment affirmed.

———————————

HJELM, J., with whom ALEXANDER and JABAR, JJ., join, dissenting.

[¶37] For two fundamental reasons, I disagree with the Court's conclusion that Packgen, Inc.'s claim for professional negligence, filed against its former attorneys, Bernstein, Shur, Sawyer & Nelson, P.A., is barred by the statute of limitations. First, in my view, the complaint sufficiently alleges that some negligent omissions occurred within the period of limitations, and so that part of Packgen's claim should survive for that reason alone. Second, the doctrine of continuing negligence, which we have adopted in cases involving medical negligence, should be applied to claims of legal malpractice and, at this very early phase of the case, entitles Packgen to pursue the entirety of its negligence claim. For these reasons, I respectfully dissent.

[¶38] The narrow issue presented here is the legal viability of Packgen's claim as pleaded in its amended complaint. The criterion for assessing the adequacy of a pleading is familiar and generous. For purposes of this analysis, we take the allegations to be true and "examine the complaint in the light most favorable to the plaintiff to determine whether it sets forth elements of a cause

of action or alleges facts that would entitle the plaintiff to relief pursuant to some legal theory." *Argereow v. Weisberg*, 2018 ME 140, ¶ 2, 195 A.3d 1210 (quotation marks omitted). Because Maine is a notice-pleading jurisdiction, the level of scrutiny used to assess the sufficiency of a pleading is "forgiving." *Howe v. MMG Ins. Co.*, 2014 ME 78, ¶ 9, 95 A.3d 79 (quotation marks omitted). The statute of limitations—an affirmative defense—is the sole basis for Bernstein Shur's motion to dismiss Packgen's complaint, so dismissal is proper only if "it is clear on the face of the complaint" that the claim is time-barred. *Jackson v. Borkowski*, 627 A.2d 1010, 1013 (Me. 1993).

[¶39] The relevant facts and chronology of events as alleged in Packgen's amended complaint are not complicated. Packgen retained Bernstein Shur in 2008 "to prosecute its legal claims" arising from a commercial dispute. In late May of 2008, Bernstein Shur sent the prospective defendant a notice of claim, but the form of the notice was insufficient to trigger the accrual of prejudgment interest, *see* 14 M.R.S. § 1602-B(5) (2018). Then, over the course of the next three years, Bernstein Shur continuously "failed to file suit," failed to serve the prospective defendant with a proper notice of claim, and failed to "otherwise diligently pursue the case[,] which caused additional damage to Packgen." In 2011, Packgen terminated its relationship with Bernstein Shur and "retained

new counsel[,] who promptly brought suit on Packgen's behalf," resulting in a substantial money judgment for Packgen.

[¶40]  Packgen and Bernstein Shur entered into a tolling agreement, which, as of December 11, 2015, stopped the clock that would determine the timeliness of any claim that Packgen might later assert against Bernstein Shur. And, in fact, in May of 2017, Packgen commenced this action.  Because, as the parties agree, Packgen's claim against Bernstein Shur is subject to a six-year period of limitations, *see* 14 M.R.S. § 752 (2018), the tolling agreement renders as timely any part of Packgen's claim that accrued on or after December 11, 2009.

[¶41]  The interpretation and application of two interrelated statutes are integral to this appeal.  The first statute, 14 M.R.S. § 752, applies broadly and provides,

> All civil actions shall be commenced within 6 years after the cause of action accrues and not afterwards, except actions on a judgment or decree of any court of record of the United States, or of any state, or of a justice of the peace in this State, and except as otherwise specially provided.

The second, 14 M.R.S. § 753-B (2018), applies specifically to actions commenced against attorneys and states,

> In actions alleging professional negligence, malpractice or breach of contract for legal service by a licensed attorney, the statute of

limitations starts to run from the date of the act or omission giving rise to the injury, not from the discovery of the malpractice, negligence or breach of contract, except as provided in this section or as the statute of limitations may be suspended by other laws.

[¶42] The facial reach of the six-year limitation period created by section 752 covers some, but not all, of the time that Bernstein Shur represented Packgen, which was from 2008 into 2011. Thus, in examining the timeliness of Packgen's claims, there are two different periods to be considered: (1) the period beginning December 11, 2009, which is the six-year period that ended with the effective date of the parties' tolling agreement; and (2) the period that predates December 11, 2009. Because the legal considerations differ as between these two timeframes, I address them separately.

A. Allegations of Negligence Occurring On and After December 11, 2009

[¶43] As I note above, Packgen alleges that throughout the entire course of Bernstein Shur's representation of its interests, which extended until sometime in 2011—and includes more than one year within the period of limitations prescribed in section 752—the firm was negligent in several different ways. Packgen's claim includes allegations, not only that Bernstein Shur was negligent by issuing the statutorily defective notice of claim, but also that the firm negligently failed to file suit on Packgen's underlying commercial claim, which also would have triggered the accrual of prejudgment interest

arising from that claim. Thus, although the Court focuses exclusively on the Bernstein Shur's allegedly negligent act of issuing a deficient notice of claim in May of 2008, there is more to Packgen's claim.

[¶44] Although Bernstein Shur's issuance of the defective notice of claim is a single allegedly negligent *act* with an ascertainable date,[11] the failure to commence an action altogether is an allegedly negligent *omission*—something that never happened at all. And from the allegations contained in the amended complaint, it is not possible to assign a date certain to an event that did not occur; that omission is temporally indeterminate within the period when Bernstein Shur represented Packgen. In other words, for purposes of determining whether the amended complaint is time-barred on its face, Packgen's allegation that Bernstein Shur committed legal malpractice by not filing suit does not inevitably lead to the conclusion that the alleged negligence associated with that omission necessarily falls entirely outside the period of

---

[11] Because the Court should apply the doctrine of continuing negligence in assessing the facial viability of Packgen's complaint, the date of the defective notice may not be the date when Packgen's cause of action itself accrued. For the reasons I discuss later in this dissent, that will need to be determined on the basis of an evidentiary presentation such as summary judgment motion practice. But even if—as the Court holds today—the doctrine of continuing negligence is unavailable, the amended complaint is still not untimely on its face because, as I explain in the text, it is impossible to assign a date outside of the period of limitations to a negligent omission in the form of failing to file suit. This means there is no need to consider whether, as a legal matter, Bernstein Shur could be found liable for its failure, continuing past December 11, 2009, to correct its allegedly negligent *act* of issuing the defective notice of claim in May of 2008.

limitations. The bones of Packgen's amended complaint are sufficient to encompass an assertion, which could only be fleshed out during the evidentiary phases of the case, that Bernstein Shur, in the exercise of due care, should have commenced the action in the commercial case on or after December 11, 2009. Based on this aspect of Packgen's claim alone, its amended complaint was not facially untimely.

[¶45] I also note that the trial court's order dismissing the complaint was actually provisional. While concluding that Packgen's claim was outside of the period of limitations, the court gave Packgen an opportunity to seek leave to further amend its amended complaint to allege damages other than those allegedly caused by the defective notice of claim sent in 2008. Although Packgen did not file any such motion, the absence of any supplemental filing by Packgen is inconsequential. In its amended complaint, Packgen had *already* alleged a sufficient basis—the failure to file suit, for example—on which Bernstein Shur could be determined liable based on negligent acts or omissions occurring directly within the six-year limitations period. Therefore, the court erred by requiring Packgen to do something more than it had already done in order to avoid dismissal of its complaint.

[¶46] Because Packgen's amended complaint alleges negligence that occurred within the limitations period, which runs forward from December 11, 2009, I conclude that the court erred by dismissing that portion of Packgen's claim.

B.    Allegations of Negligence Occurring Before December 11, 2009

[¶47] In contrast to Packgen's claim for negligence that occurred on or after December 11, 2009, its claim for negligent acts or omissions occurring before that date is time-barred pursuant to section 752 *unless* an appropriate legal mechanism brings that part of Packgen's claim back within the period of limitations. Packgen asserts that two such legal theories preclude the dismissal of those older aspects of its claim against Bernstein Shur: continuing representation and continuing negligence.[12]

[¶48] I agree with the Court's conclusion that the mere continuation of an attorney's representation of a client on an ongoing matter extending into the

---

[12]  There are other legal doctrines that can save an otherwise stale claim from dismissal. For example, in certain limited circumstances, a party may be estopped altogether from asserting the statute of limitations as a defense, see *Dasha v. Maine Med. Ctr.*, 665 A.2d 993, 995 (Me. 1995), and a period of limitations may run, not for an absolute length of time beginning with the actionable conduct, but from the moment the injured party actually or constructively discovers the wrongful conduct, *see, e.g.*, 14 M.R.S. § 753-B(2)-(3) (2018) (creating a discovery rule applicable to the statute of limitations governing certain types of actions against attorneys); 24 M.R.S. § 2902 (2018) (creating a discovery rule for the limitation period in claims of foreign-object surgical malpractice). Packgen has not sought to invoke any of those doctrines here.

limitations period does not preclude the statute of limitations from barring a claim based on a negligent act or omission that occurred outside of the limitation period. *See* Court's Opinion at ¶¶ 25-29. We have reached that conclusion in the context of a medical malpractice claim, *see Dickey v. Vermette*, 2008 ME 179, ¶¶ 4-8, 960 A.2d 1178; *see also Baker v. Farrand*, 2011 ME 91, ¶¶ 18-19, 26 A.3d 806, and the same analysis applies to legal malpractice claims. In *Dickey*, we explained that the "act or omission" phraseology contained in 24 M.R.S. § 2902 (2018),[13] which is the statute of limitations for actions against health care providers and practitioners, does not permit time-barred claims to become timely simply because of an ongoing professional relationship between the medical provider and the patient. 2008 ME 179, ¶¶ 7-8, 960 A.2d 1178. That statutory language is identical to the "act or omission" language contained in section 753-B, which applies here. Therefore, our analysis in *Dickey* is fatal to Packgen's argument that Bernstein Shur's representation of its interests in the underlying matter within six years of the commencement of this action, by itself, precludes dismissal of the action as untimely.

---

[13] Title 24 M.R.S. § 2902 was amended after our decision in *Dickey*, *see* P.L. 2013, ch. 329, § 2 (effective Oct. 9, 2013), but not in any manner that affects my analysis.

[¶49]  I part ways with the Court, however, when it concludes that this case does not allow for the application of a doctrine that is, in effect, a subsidiary of the continuing representation theory—namely, the continuing negligence doctrine.

[¶50]  As the Court correctly describes, the continuing negligence doctrine prevents the limitations clock from beginning to tick until the date of the last negligent occurrence that proximately causes injury.  *See* Court's Opinion ¶ 2 n.4; *see also Baker*, 2011 ME 91, ¶ 20, 26 A.3d 806.[14]  The doctrine is a framework for viewing a series of actionable acts or omissions as an integrated whole that may be pursued in a single cause of action.  So long as the last in that series is within the period of limitations, a claim based on the entire incorporated body of negligent acts or omissions is deemed to be timely.  *See Baker v. Farrand*, 2011 ME 91, ¶ 25, 26 A.3d 806 ("In such cases, the cause of action 'accrues' for the purposes of the . . . limitations period on the date of the last act or omission . . . that contributed to the proximate causation of the patient's harm.").

---

[14]  Because the doctrine of continuing negligence is a way to determine when a cause of action accrues—that is, the time when the limitations clock starts—it does not implicate notions of tolling, which would mean stopping a limitations clock that was already ticking. *See also supra* n.12.  Because of this important analytical distinction, we may have been less than precise in the way, even recently, we have characterized the continuing negligence doctrine.  *See York Cty. v. PropertyInfo Corp.*, 2019 ME 12, ¶ 24, 200 A.3d 803.

32

[¶51]  We have endorsed the application of the continuing negligence doctrine in medical negligence cases.[15]  In such actions, the plaintiff is entitled to

> bring a single action alleging continuing negligent treatment that arises from two or more related acts or omissions by a single health care provider or practitioner where each act or omission deviated from the applicable standard of care and, to at least some demonstrable degree, proximately caused the harm complained of, *as long as at least one of the alleged negligent acts or omissions occurred within three years of the notice of claim.*[16]

*Baker*, 2011 ME 91, ¶ 29, 26 A.3d 806 (emphasis added).  In other words, where at least one negligent act or omission that demonstrably and proximately contributed to the harm occurred within the period of limitations, but other related acts or omissions occurred outside the period of limitations, the entirety of the claim may be prosecuted.

[¶52]  Our adoption of the continuing negligence doctrine in *Baker* resulted from two separate analytical strands.  The first draws on an examination of statutes that are specific to medical negligence claims.  In

---

[15]  We did so notwithstanding the general principle that a statute of limitations "should be construed strictly in favor of the bar which it was intended to create." *Harkness v. Fitzgerald*, 1997 ME 207, ¶ 5, 701 A.2d 370 (quotation marks omitted).  As is demonstrated by the very outcome in *Baker*, that principle of statutory construction does not by itself foreclose adoption of the continuing negligence principle.

[16]  Baker's claim was governed by a three-year period of limitations.  *See* 24 M.R.S. § 2902.  Here, the applicable statute of limitations is six years.  *See* 14 M.R.S. § 752.

particular, we noted that 24 M.R.S. § 2902—the statute of limitations for "actions for professional negligence" against medical providers and practitioners—identifies the event giving rise to the claim as an "act or omission" but that the Health Security Act, of which section 2902 is a part, does not define the term. *Baker*, 2011 ME 91, ¶ 22, 26 A.3d 806. Elsewhere, however, the Act defines "professional negligence" as encompassing the pluralized "acts or omissions." 24 M.R.S. § 2502(7)(A)-(B) (2018). Partly on that basis, we concluded that these statutes reflect a legislative recognition that a single cause of action can arise from multiple acts or omissions that contribute to an overall harm. *Baker*, 2011 ME 91, ¶¶ 23, 29, 26 A.3d 806. This recognition in turn supports the application of the continuing negligence doctrine. *Id.* ¶¶ 23-24. But, because this portion of the discussion in *Baker* rests on statutory provisions that do not extend to or have analogous counterparts in the statutes that govern legal malpractice claims, Packgen does not benefit from it.

[¶53] That is not true with respect to the second reason why we adopted the principle of continuing negligence in *Baker*. Our second line of reasoning draws on both rules of statutory construction and on jurisprudential principles that are of more universal application and persuasively extend to this action for legal malpractice. *See id.* ¶ 27.

[¶54] The construction of the phrase "act or omission" was at issue in *Baker*, just as it is here. As we discussed in that case, the Legislature has explicitly stated that "[w]ords of the singular number may include the plural," 1 M.R.S. § 71(9) (2018), so the use of "act or omission"—presented in the singular—in section 2902 cannot properly be limited to each individual act or omission. *Baker*, 2011 ME 91, ¶¶ 27-28, 26 A.3d 806. Rather, as we concluded, section 2902's "plain meaning"—the gold standard of statutory construction, *see Schwartz v. Unemployment Ins. Comm'n*, 2006 ME 41, ¶ 15, 895 A.2d 965[17]— encompasses multiple acts and omissions. *Baker*, 2011 ME 91, ¶ 28, 26 A.3d 806. This construction accommodates the legal principle that "a single cause of action may arise from multiple acts or omissions even if each independent act or omission, viewed in isolation from the other acts or omissions, constitutes an independent deviation from the applicable standard of care." *Id.* ¶ 24. Correspondingly, this construction avoids creating a separate cause of action based on each and every negligent act or omission arising from an ongoing

---

[17] In *Schwartz*, we stated that "[t]he cardinal rule of statutory construction is that when the words of the Legislature are clear, they are to be given their plain meaning and further judicial interpretation is not necessary." *Schwartz v. Unemployment Ins. Comm'n*, 2006 ME 41, ¶ 15, 895 A.2d 965 (quotation marks omitted).

professional relationship, which could be—or would need to be—pursued through splintered claims. *Id.* ¶¶ 25-26.

[¶55] This part of *Baker's* analysis, which is sufficient to support its holding,[18] carries over seamlessly to Packgen's legal malpractice claim against Bernstein Shur and the statutes that apply here. This is true with both the close examination in *Baker* of the words in the phrase "act or omission" and our broader discussion in that case of principles governing the way causes of action are properly framed.

[¶56] First, as to the statutory language itself, Title 14, section 753-B contains language defining the event giving rise to Packgen's claim—an "act or omission"—that is identical to the language in 24 M.RS. § 2902, which we analyzed in *Baker*. There, we applied the rule of statutory construction providing that a word in a statute presented in the singular also includes the plural, 1 M.R.S. § 71(9), a principle of construction that spans the entirety of

---

[18] The Court rejects the applicability of *Baker* to section 753-B by reading our opinion in that case narrowly to say that it is the Health Security Act that allows a single claim to be based on multiple acts or omissions. Court's Opinion ¶¶ 33, 34. Although—as I have discussed in the text—*Baker* rests in part on an analysis of provisions contained in the Health Security Act that are not applicable here, *Baker* also makes clear that our rationale for adopting the continuing negligence doctrine is not as limited as the Court suggests here. 2011 ME 91, ¶¶ 26-27, 26 A.3d 806 (stating that "*our reading of the statute must be squared with all applicable rules of statutory construction*" (emphasis added) (quotation marks omitted)). And beyond this, as I explain in the text, much of the conceptual reasoning that warrants application of the continuing negligence doctrine to medical malpractice cases applies with equal persuasiveness to the case at bar.

Maine's statutory code and informs our construction of section 753-B just as much as it did our construction of 24 M.R.S. § 2902. Therefore, section 753-B must be read to encompass multiple acts or omissions to the extent that such multiple related occurrences may give rise to a single cause of action.

[¶57] Second, and more broadly, the conceptual observations we made in *Baker* apply with equal force in the present context. As a substantive legal principle, multiple acts or omissions that comprise individual deviations from the standard of care can combine to proximately cause a discrete harm and give rise to a single cause of action. *Baker*, 2011 ME 91, ¶ 24, 26 A.3d 806. Relatedly, a plaintiff should not be required to litigate those separate negligent acts or omissions in a piecemeal manner. *See id.* ¶ 25. These principles apply directly to claims for legal malpractice every bit as much as they do to claims for medical negligence.

[¶58] All of this—the dry process of statutory interpretation and a conceptual consideration of the nature of a professional negligence claim—demonstrates that, for many of the same reasons we stated in *Baker*, the principle of continuing negligence is readily accommodated by sections 752 and 753-B in this legal malpractice action. I would therefore apply *Baker*'s conclusion to this case and—to paraphrase the language in *Baker*—hold that,

when a single cause of action arises from an attorney's multiple acts or omissions while representing a client, and when the combination of those multiple acts or omissions proximately causes the alleged injury, the single resulting cause of action accrues on the date of the last act or omission that contributed to the alleged injury, because that is when the alleged negligence is complete. *See Baker*, 2011 ME 91, ¶ 24, 26 A.3d 806.

[¶59]   This statement of the continuing negligence doctrine also illuminates its limiting principle—that the claim will be time-barred if the last of the negligent acts or omissions that demonstrably and proximately contributed to the injury occurred outside of the period of limitations.[19] Consequently, if the case were to proceed on remand, as I believe it should, in order for Packgen to recover for negligent acts or omissions that occurred before December 11, 2009, Packgen would be required to demonstrate that at least one negligent act or omission that occurred on or *after* December 11, 2009, demonstrably and proximately contributed to the harm also caused by those earlier related acts or omissions.

---

[19]   This limitation was illustrated in *Dickey v. Vermette*, which we decided before *Baker*. *See* 2008 ME 179, 960 A.2d 1178.  In *Dickey*, we concluded that that case did not present the occasion for us to decide whether to adopt the doctrine of continuing negligence because the plaintiffs stipulated that they had not sustained any injury from any act or omission occurring within the period of limitations. *Id.* ¶ 9.  Therefore, a claim for any and all actionable negligence fully accrued outside of the limitations period, and adoption of the doctrine would have been unavailing for the plaintiffs.

38

[¶60] Based on the amended complaint alone and without the benefit of a record, the Court is willing to jump to the conclusion that Packgen will be unable to present any evidence sufficient to meet this requirement. *See* Court's Opinion ¶ 33. There, the Court states that Packgen's claim arose from a single act, namely, the defective notice of claim sent in 2008, and that it is "reasonably probable" that Packgen's injury is attributable entirely to that act. *Id.* ¶ 33. This is an inappropriately narrow reading of the amended complaint, which alleges negligence that continued throughout the period of representation, from 2008 into 2011. As is demonstrated by the use of the phrase "reasonably probable," the Court's assertion embodies a factual assessment that is wholly out of place in the procedural context where this case now stands.[20] Packgen's ability to present evidence to defeat Bernstein Shur's limitations defense remains to be seen—it is something that is impossible to determine until after Packgen has

---

[20] The Court's reliance on *Baker* to reach that conclusion is similarly misplaced because the judgment appealed in *Baker* was a summary judgment, issued on the basis of a developed factual record. *See* 2011 ME 91, ¶ 1, 26 A.3d 806. Here, there is no record on which to draw the fact-based conclusions that the Court reaches in its opinion. *See Bean v. Cummings*, 2008 ME 18, ¶ 7, 939 A.2d 676 (stating that a dismissal pursuant to M.R. Civ. P. 12(b)(6) is appropriate only "when it appears beyond doubt that a plaintiff is entitled to no relief under *any set of facts that he might prove in support of his claim*" (emphasis added)); *Houde v. Millett*, 2001 ME 183, ¶ 11, 787 A.2d 757 (stating that "[t]he question of whether a defendant's acts or omissions were the proximate cause of a plaintiff's injuries is generally a question of fact . . . .").

the opportunity to present evidence that will put substance on the bones of its amended complaint.

C.    Conclusion

[¶61]  For now, the only question before us is whether the allegations in Packgen's amended complaint make clear that the claim is time-barred.  *See Jackson*, 627 A.2d at 1013.  In my view, the amended complaint withstands that facial review, particularly given the "forgiving" notice-pleading standard by which the sufficiency of a complaint is reviewed, *see Howe*, 2014 ME 78, ¶ 9, 95 A.3d 79.  Packgen has alleged negligence within the period of limitations itself, through sometime in 2011 when Packgen terminated its relationship with the firm.  Further, for purposes of the present pleading stage of the case, pursuant to the continuing negligence doctrine the allegations of Bernstein Shur's negligent acts or omissions occurring before December 11, 2009, can properly be treated as an integrated part of a claim that did not accrue until on or after December 11, 2009—within the period of limitations.  Accordingly, I would vacate the judgment and remand for the trial court proceedings to continue.

40

Phillip E. Johnson, Esq. (orally), Johnson, Webbert & Young, LLP, Augusta, for appellant Packgen, Inc.

George T. Dilworth, Esq. (orally), and Jeana M. McCormick, Esq., Drummond Woodsum, Portland, for appellee Bernstein, Shur, Sawyer & Nelson, P.A.

Cumberland County Superior Court docket number CV-2017-208
FOR CLERK REFERENCE ONLY