STATE OF MAINE
CUMBERLAND, ss.

BUSINESS AND CONSUMER COURT
Location: Portland
DKT. NO. BCD-CIV-2021-0017

TRUSTEES OF BERWICK ACADEMY, )
)
    Plaintiff/Counterclaim Defendant, )
)
v. )
)
)
TOM MAHONEY and HEATHER )
MAHONEY, )
)
    Defendants/Counterclaim Plaintiffs. )

**ORDER ON COUNTERCLAIM
DEFENDANT'S MOTION TO
DISMISS**

Plaintiff Trustees of Berwick Academy (the "Academy") moves to dismiss, pursuant to M.R. Civ. P. 12(b)(6), the counterclaims brought by defendants Tom Mahoney and Heather Mahoney (collectively, the "Mahoneys").[1] The Court has reviewed the counterclaims, the parties' briefing on the motion, and the applicable law. It grants the motion in part and denies the motion in part.

## LEGAL STANDARD

"A motion to dismiss tests the legal sufficiency of the complaint, the material allegations of which must be taken as admitted . . . ." *Packgen, Inc. v. Bernstein, Shur, Sawyer & Nelson, P.A.*, 2019 ME 90, ¶ 16, 209 A.3d 116 (citations omitted). When deciding a motion to dismiss pursuant to M.R. Civ. P. 12(b)(6), the complaint is viewed "in the light most favorable to the plaintiff to determine whether it sets forth elements of a cause of action or alleges facts that would entitle the plaintiff to relief pursuant to some legal theory." *Ramsey v. Baxter Title Co.*, 2012 ME

---

[1] While the motion to dismiss was pending, the Mahoneys filed an amended answer and counterclaim. The parties and the Court agreed this did not affect the motion to dismiss because the amendments pertained to affirmative defenses in the answer. Therefore, the Court granted the motion to amend the answer and counterclaim but did not require the parties to refile the briefing on the motion to dismiss the counterclaims.

1

113, ¶ 6, 54 A.3d 710 (quotation marks omitted). While the Court must accept as true all well-pleaded factual allegations in the complaint, it is "not bound to accept the complaint's legal conclusions." *Bowen v. Eastman*, 645 A.2d 5, 6 (Me. 1994) (citing *Robinson v. Washington Cnty.*, 529 A.2d 1357, 1359 (Me. 1987)). "A dismissal is only proper when it appears beyond doubt that [the] plaintiff is entitled to no relief under any set of facts that [it] might prove in support of [its] claim." *Packgen*, 2019 ME 90, ¶ 16, 209 A.3d 116 (alterations in original). A complaint only needs to consist of a short and plain statement of the claim to provide fair notice of the cause of action. *Johnston v. Me. Energy Recovery Co., Ltd. P'ship*, 2010 ME 52, ¶ 16, 997 A.2d 741.

On a motion to dismiss for failure to state a claim, the Court generally cannot consider documents outside the pleadings without treating the motion as one for summary judgment. *See* M.R. Civ. P. 12(b); *see also Moody v. State Liquor & Lottery Comm'n*, 2004 ME 20, ¶ 8, 843 A.2d 43. However, the Court can consider "official public documents, documents that are central to the plaintiff's claim, and documents referred to in the complaint . . . when the authenticity of such documents is not challenged." *Id.* ¶ 11. When the Court does consider such documents, those documents merge into the pleadings. *Id.* ¶ 10. In this case, the Re-Enrollment Contract satisfies the *Moody* doctrine and thus merges into the pleadings.

**FACTUAL ALLEGATIONS**

The Mahoneys are parents of a minor child who has attended the Academy every school year from 3rd to 9th grade. (Mahoneys' Countercl. ¶¶ 5-6.) As a result of the child's attendance as a student for many years at the Academy, the Mahoneys acquired a detailed understanding of the academic and extracurricular programs provided by the Academy, as well as regarding certain other services available to students, such as transportation and dining services. (Mahoneys' Countercl. ¶ 7.) The Mahoneys also acquired a detailed understanding as to the manner and

method by which their child would attend the Academy, including without limitation, the fact that the child would receive in-person instruction for all classes and be able to attend school in-person and be able to interact with all students, faculty, and staff in the ordinary course. (Mahoneys' Countercl. ¶ 8.)

In reliance upon their detailed understandings as to the programs and services provided by the Academy and the manner and method by which such programs and services would be provided by the Academy, on or about February 4, 2020, the Mahoneys entered into a Re-Enrollment Contract with the Academy by which they agreed to enroll their child at the Academy as a 10th grade student during the 2020-21 academic year. (Mahoneys' Countercl. ¶ 9.) By its terms, the Re-Enrollment Contract provides for a deadline of June 1, 2020 by which the Mahoneys had the right to withdraw their daughter from attendance at the Academy and thereby terminate all payment and other obligations under the Re-Enrollment Contract. (Mahoneys' Countercl. ¶ 11.) Pursuant to the terms of the Re-Enrollment Contract, on or about February 4, 2020, the Mahoneys paid the Academy a $4,230 deposit toward the $42,300 tuition cost provided for by the terms of the Re-Enrollment Contract. (Mahoneys' Countercl. ¶ 12.)

At the time the Mahoneys signed the Re-Enrollment Contract for their daughter and paid a $4,230 deposit, the global COVID-19 pandemic and its resulting impacts upon the Academy's operations were wholly unknown. (Mahoneys' Countercl. ¶ 13.) It was not until mid to late March 2020 that the extent and impact of the pandemic first became understood and the various "lockdown" and other governmental orders were first issued in Maine and across the Nation. (Mahoneys' Countercl. ¶ 13.) Accordingly, at the time the Mahoneys and the Academy entered into the Re-Enrollment Contract, the impacts of the pandemic upon the Academy's operations were unforeseeable and were not a considered factor. (Mahoneys' Countercl. ¶ 14.) As a

consequence of the COVID-19 global pandemic, the Academy was required to alter its operations, including without limitation, the manner and method by which students, including the Mahoneys' daughter, would attend the Academy and the manner and method by which services and amenities would be made available to Berwick Academy students. (Mahoneys' Countercl. ¶ 15.)

As of the June 1, 2020 withdrawal deadline provided for by the terms of the Re-Enrollment Contract, the Academy had failed to confirm to the Mahoneys the manner and method by which students would be taught at the Academy during the 2020-21 academic year, as well as the manner and method by which services and amenities would be made available to the Academy students during the 2020-21 academic year. (Mahoneys' Countercl. ¶ 16.) Among other things, the Academy had failed to confirm to the Mahoneys whether students would receive in-person instruction or would be required to attend school on-line. (Mahoneys' Countercl. ¶ 17.) It was well after the June 1, 2020 deadline that State and Federal authorities established rules and regulations for students' attendance at school during the 2020-21 academic year in light of the COVID-19 global pandemic. (Mahoneys' Countercl. ¶ 18.) The governmental rules and regulations to which the Academy is subject with respect to the 2020-21 academic year include, without limitation, rules and regulations which potentially require the Academy to suspend or terminate in-person class instruction and/or limit the number of students in attendance at school on a given day. (Mahoneys' Countercl. ¶ 18.)

Both prior to and after the June 1, 2020 withdrawal deadline, the Academy confirmed to the Mahoneys that the conditions upon which the Academy would operate during the 2020-21 academic year remained unknown and were evolving. (Mahoneys' Countercl. ¶ 19.) Nonetheless, the Academy refused or otherwise failed to extend the June 1, 2020 withdrawal deadline of a student from the Academy for the 2020-21 academic year. (Mahoneys' Countercl. ¶ 20.) It was

4

not until well after the June 1 deadline imposed by the terms of the Re-Enrollment Contract that the Academy first disclosed to the Mahoneys, and the Academy community at large, numerous changes in the Academy's academic program and related offerings for the 2020-21 academic year, as well as numerous new conditions on attendance at the Academy, necessitated by the COVID-19 pandemic. (Mahoneys' Countercl. ¶ 21.) The changes for the 2020-21 academic year announced by the Academy after the June 1 deadline included, without limitation, the possibility that in-person instruction would be limited, periodically suspended, and/or eliminated in light of COVID-19 conditions. (Mahoneys' Countercl. ¶ 22.) The changes for the 2020-21 academic year announced by the Academy after the June 1 deadline also included, without limitation, changes to (a) the manner by which students would be grouped and would attend school, including the establishment of student "pods" and masking requirements, (b) the manner by which transportation services would be made available to students, (c) dining services, and (d) athletics. (Mahoneys' Countercl. ¶ 23.)

In addition, the changes for the 2020-21 academic year announced by the Academy after the June 1 deadline included the Academy's imposition of the requirement that the Mahoneys, and all other parents of Academy students, sign a release and indemnification agreement in favor of the Academy providing for a full release and indemnification of the Academy from and against all COVID-19 related claims, including regarding claims asserted by third-parties. (Mahoneys' Countercl. ¶ 24.) The Mahoneys allege that the changes made by the Academy after the June 1 withdrawal deadline altered the benefit for which the Mahoneys bargained when they entered into the Re-Enrollment Contract in February 2020, prior to the onset of the COVID-19 global pandemic. (Mahoneys' Countercl. ¶ 25.) The Mahoneys found these changes to be unacceptable and, therefore, withdrew their daughter from attendance at the Academy during the 2020-21

5

academic year. (Mahoneys' Countercl. ¶¶ 26, 30.) Moreover, the Mahoneys contend, "[o]n information and belief, Berwick Academy is at full-capacity for its 2020-21 academic year and there is a waiting list for students who wish to attend Berwick Academy during the 2020-21 academic year." (Mahoneys' Countercl. ¶ 31.)

Based on the foregoing, the Mahoneys filed counterclaims for a declaratory judgment (Count I), breach of contract (Count II), promissory estoppel (Count III), unjust enrichment (Count IV), and violation of the Maine Unfair Trade Practices Act ("UTPA") (Count V).

## ANALYSIS

The Academy seeks dismissal of each count for various reasons, many of which delve into the merits of the claims, not only whether the Mahoneys have alleged facts that might entitle them to relief under some legal theory. The Court addresses each in turn.

### 1. The declaratory judgment claim.

The Academy seeks dismissal of the declaratory judgment claim because it "is redundant or duplicative of a claim or defense already pleaded . . . ." (The Academy's MTD 4.) To support this argument, the Academy cites to cases involving in dismissal of declaratory judgment claims in Rule 80B appeals from government actions. *E.g.*, *Cape Shore House Owners Ass'n v. Town of Cape Elizabeth*, 2019 ME 86, ¶ 9, 209 A.3d 102 ("[B]ecause Cape Shore's claim for declaratory relief was not independent from its Rule 80B appeal, the court's dismissal of Cape Shore's claim for declaratory judgment as duplicative was not an abuse of its discretion."). That proposition is not procedurally relevant in a non-80B case because, "[w]ith respect to independent claims that are not subject to Rule 80B, . . . when direct review is available pursuant to Rule 80B, it provides the exclusive process for judicial review unless it is inadequate." *Gorham v. Androscoggin Cnty.*, 2011 ME 63, ¶ 22, 21 A.3d 115. For that reason, in the unique context of appeals from

governmental action, "Rule 80B is the sole means for seeking Superior Court review of action or failure or refusal to act by any governmental agency, whether such review is specifically authorized by statute or is otherwise available by law." *Sold, Inc. v. Town of Gorham*, 2005 ME 24, ¶ 13, 868 A.2d 172. This is not applicable in a traditional civil action.

Here, on this motion to dismiss, the question is instead whether the Mahoneys have sufficiently alleged a justiciable controversy. *See Annable v. Bd. of Envtl. Prot.*, 507 A.2d 592, 595 (quotation marks omitted) (Me. 1986) ("Essential to the maintenance of a declaratory judgment action is the presence of a justiciable controversy, which [is] defined as a claim of right, buttressed by a sufficiently substantial interest to warrant judicial intervention."). The Mahoneys have alleged such a justiciable controversy as it pertains "to the validity and/or enforceability of the Re-Enrollment Contract and the June 1, 2020 Withdrawal Deadline provided for thereunder, including without limitation, with respect to Berwick Academy's right to enforce the terms of the Re-Enrollment Contract against The Mahoneys and thereby compel The Mahoneys to pay monies to Berwick Academy . . . ." (Mahoneys' Countercl. ¶ 39.) The motion is denied on this ground.

### 2. The breach of contract claim.

The elements of a breach of contract claim include: "(1) breach of a material contract term; (2) causation; and (3) damages." *Me. Energy Recovery Co. v. United Steel Structures, Inc.*, 1999 ME 31, ¶ 7, 724 A.2d 1248. "A material breach of contract is a non-performance of a duty that is so material and important as to justify the injured party in regarding the whole transaction as at an end." *Cellar Dwellers, Inc. v. D'Alessio*, 2010 ME 32, ¶ 16, 993 A.2d 1 (quotation marks omitted). The Academy moves to dismiss the breach of contract claim on the basis that the Re-Enrollment Contract "does not include a right to receive in-person instruction or any other specific form of educational programming or services." (The Academy's MTD 5.) In response, the Mahoneys

7

point to their "understandings regarding the type, quality, or character of the education that their child would receive" and contend "[t]he claim is based not only on the matter of in-person instruction, but also on *the manner* of in-person instruction . . . ." (Countercl. Pl.s' Opp. 7, 10 (emphasis in original).) Each side points to an iteration of similar litigation in Massachusetts. *See Chong v. Northeastern University*, 494 F. Supp. 3d 24 (D. Mass. 2020) (hereinafter "*Chong I*"); *Chong v. Northeastern University*, No. 20-10844-RGS, 2020 U.S. Dist. LEXIS 233923 (D. Mass. Dec. 14, 2020) (hereinafter "*Chong II*").

In *Chong I*, the Annual Financial Responsibility Agreement provided that, "[i]n exchange for the opportunity to enroll at Northeastern, *to receive educational services*, and for other valuable consideration, I agree" to pay tuition and fees. 494 F. Supp. 3d at 26 (emphasis added). The court noted that the term "educational services" was not defined. *Id.* The court then dismissed the tuition-related claims because the agreement "tie[d] the payment of tuition to registration for courses, not to the receipt of any particular method of course instruction."[2] *Id.* at 28. Plaintiffs there attempted to rely on course descriptions provided by the registrar, but the court noted that the plaintiffs did not plead that the course descriptions were a part of the contract. *Id.*

In *Chong II*, for the tuition-related claims, plaintiffs again pointed to the Annual Financial Responsibility Agreement but also alleged that the right to in-person instruction derived from course registration materials that made references to "traditional" instruction. 2020 U.S. Dist. LEXIS 233923, at *7. This time, the court concluded it could not "say that no student who read these statements could have reasonably expected that executing the FRA and registering for on campus courses would entitle them to in-person instruction." *Id.* at *8.

---

[2] Fee-related claims survived the motion to dismiss to the extent they were based on payment of the campus recreation fee because "[p]ayment of the campus recreation fee . . . g[ave] students" the option to use specific facilities. *Chong v. Northeastern University*, 494 F. Supp. 3d 24, 29 (D. Mass. 2020).

Here, the Re-Enrollment Contract includes a similar "in exchange" provision, but offers more details as to what are the ostensibly comparable "educational services" what other "valuable consideration" is included as part of the deal: "[i]n exchange for this agreement to enroll, and in consideration of the School's reservation of a *place* for the student and the School's undertaking to provide teachers, support staff, *facilities*, and *equipment* necessary for the full academic year, I agree to pay all tuition, fees and charges for the entire academic year . . . ." (Compl. Ex. A p. 2.) The Re-Enrollment Contract expressly ties the payment of tuition, fees, and charges to enrollment, and in consideration of, among other things, a "place" for the student as well as "facilities[] and equipment necessary for the full academic year . . . ." (Compl. Ex. A p. 2.) At this early stage of the litigation where the Court is viewing the facts in the light most favorable to the Mahoneys, the Court cannot say that this does not imply a contractual right to a full in-person experience that the Academy allegedly may have breached in the manners asserted by the Mahoneys. Further factual development can shed light on other pertinent aspects of whether the Academy actually breached any material terms of the agreement, but that is not for decision at the pleading stage.[3]

3. <u>The promissory estoppel claim and unjust enrichment claim.</u>

The Academy moves to dismiss the promissory estoppel claim on the basis that the Mahoneys do not allege any promise made regarding the manner or matter of a full in-person

---

[3] The Court notes a key distinction between this case and many of the federal cases of similar ilk: in the vast majority of the federal cases regarding tuition and fees during the COVID-19 pandemic, the breach of contract claims stemmed from the universities' retention of tuition and fees from the interrupted Spring 2020 semester. In this case, the Mahoneys are not seeking to recover tuition and fees from the Spring 2020 semester but are instead seeking to recover the deposit they paid for the 2020-21 academic year. In other words, a person making the decision to stay enrolled in a school for the prospective 2020-21 academic year would ostensibly have a superior understanding of staying contractually enrolled in a school past the withdrawal deadline for the 2020-21 academic year during a pandemic. The Court has not analyzed to any extent the legal implications of the distinction because the Court believes the distinction is beyond the scope of whether the Mahoneys have sufficiently alleged a breach of contract claim at this early posture. Nonetheless, it highlights this distinction for the parties to keep in mind for any future legal briefing in the event the distinction is relevant.

experience.[4] (The Academy's MTD 8.) It moves to dismiss the unjust enrichment claim on the basis that the relationship is governed by the Re-Enrollment Contract.[5] (The Academy's MTD 9-10.)

To establish a claim for unjust enrichment, three elements must be shown: "[One] a benefit conferred upon the defendant by the plaintiff; [two] an appreciation or knowledge by the defendant of the benefit; and [three] the acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without payment of its value." *A.F.A.B., Inc. v. Town of Old Orchard Beach*, 610 A.2d 747, 749 (Me. 1992) (quoting *Estate of White*, 521 A.2d 1180, 1183 (Me. 1987)). Regarding promissory estoppel, the Law Court has adopted the Restatement formulation of the doctrine: "A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. The remedy granted for breach may be limited as justice requires." *See Panasonic Comm'cs & Sys. Co. v. State of Maine*, 1997 ME 43, ¶ 17, 691 A. 2d 190; Restatement (Second) of Contracts § 90(1) (1981). Promissory estoppel applies to promises that are "otherwise unenforceable." *See Panasonic*, 1997 ME 43, ¶ 17, 691 A. 2d 190.

While the Law Court has recognized "that the existence of a contract precludes recovery on a theory of unjust enrichment because unjust enrichment describes recovery . . . when there is

---

[4] The Academy also contends that, even assuming the Mahoneys had alleged a promise, "the Mahoneys' claim still fails because they cannot show that an injustice will result if Berwick Academy's 'promise' is not enforced." (The Academy's MTD 8.) Such an issue is better suited to be analyzed after factual development.

[5] As with the preceding footnote, the Academy also raises an "assuming *arguendo*" argument regarding unjust enrichment, contending that "there is no basis to find that it is inequitable or unjust for Berwick Academy to retain the Deposit." (The Academy's MTD 10.) This can also be more aptly addressed after factual development.

no contractual relationship," *June Roberts Agency, Inc. v. Venture Properties, Inc.*, 676 A.2d 46, 49 n.1 (Me. 1996), a party "is not precluded from pleading both theories because a factfinder may find that no contract exists and may still award damages on a theory of unjust enrichment." *Id.*; *see also Bates v. Anderson*, 614 A.2d 551, 552 (Me. 1992). Pleading in the alternative is expressly authorized by the Rules of Civil Procedure. M.R. Civ. P. 8(e)(2). This applies equally to the promissory estoppel claim.

Because the Mahoneys have alleged that there may be implied terms to the relationship with the Academy (e.g., Mahoneys' Countercl. ¶¶ 8-9) that could either form a promise outside the Re-Enrollment Contract or could form the basis that would make it unjust for the Academy to retain the benefit of the deposit paid by the Mahoneys, they have alleged enough for these claims to survive under the liberal pleading standard. It is certainly conceivable that, as this case moves along through the discovery phase, it will become apparent that the promissory estoppel and/or unjust enrichment claim cannot survive. At this stage of the case, however, the Complaint alleges sufficient facts to make out claims for each. The Court denies the motion on these grounds.

4. The UTPA claim.

Finally, the Academy moves to dismiss the UTPA claim because the Mahoneys do not allege that the Academy acted unfairly or that the Academy engaged in a deceptive act or practice under UTPA. (The Academy's MTD 11-12.) UTPA provides a private right of action for a consumer who (1) purchased services (2) primarily for personal use and (3) suffered a monetary loss (4) caused by (5) an unfair or deceptive trade practice. *See* 5 M.R.S. § 213(1); *see also id.* § 207 ("Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are declared unlawful."). It "provides protection for consumers against unfair and deceptive trade practices." *State v. Weinschenk*, 2005 ME 28, ¶ 11, 868 A.2d 200. "To

11

justify a finding of unfairness, the act or practice: (1) must cause, or be likely to cause, substantial injury to consumers; (2) that is not reasonably avoidable by consumers; and (3) that is not outweighed by any countervailing benefits to consumers or competition." *Id.* ¶ 16. "An act or practice is deceptive if it is a material representation, omission, act or practice that is likely to mislead consumers acting reasonably under the circumstances," and "[a]n act or practice may be deceptive . . . regardless of a defendant's good faith or lack of intent to deceive." *Id.* ¶ 17 (citations omitted).

While such a determination generally "must be made by the fact-finder on a case-by-case basis," *id.* ¶ 15, the Mahoneys have not supplied allegations that tend to show there is "any set of facts that [they] might prove in support of [their] claim." *Packgen*, 2019 ME 90, ¶ 16, 209 A.3d 116. Succinctly put, the Mahoneys have not alleged any facts that would satisfy the elements for an UTPA violation. Read most liberally, their counterclaim alleges that the Academy simply could not offer any immediate concrete information about what the educational environment would look like for the then upcoming school year because of the ever-evolving nature of the pandemic and pertinent government rules and regulations. (*E.g.*, Mahoneys' Countercl. ¶¶ 16-19.) This is not enough to allege an unfair or deceptive act.[6] *Cf. Bergeron v. Rochester Inst. of Tech.*, No. 20-CV-6283 (CJS), 2020 U.S. Dist. LEXIS 241125, at *29-30 (W.D.N.Y. Dec. 18, 2020) (stating that "no reasonable prospective student could consider him or herself 'deceived' or 'misled' where the school's normal course of on-campus instruction was altered mid-semester by an unforeseen global pandemic"); *Ford v. Rensselaer Polytechnic Inst.*, No. 1:20-CV-470, 2020 U.S. Dist.

---

[6] Moreover, the Academy's decision not to extend the withdrawal deadline cannot be "deceptive" because there are no facts alleged to support that this decision was a material representation or omission that would be likely to "mislead" the Mahoneys. Nor do any facts alleged in the counterclaim support that such a decision was "unfair" as that term is envisioned by the cases. *See State v. Weinschenk*, 2005 ME 28, ¶ 16, 868 A.2d 200.

LEXIS 236692, at *28 (N.D.N.Y. Dec. 16, 2020) ("No reasonable consumer would expect a university to remain open for in-class instruction in the face of a pandemic and a state-mandated shutdown, regardless of whether the school advertised on-campus learning as a strength."). This claim is dismissed.

The entry is:

1.  The Academy's motion to dismiss the Mahoneys' counterclaims is **DENIED** as it pertains to Counts I-IV (declaratory judgment, breach of contract, promissory estoppel, unjust enrichment), but it is **GRANTED** as it pertains to Count V (Unfair Trade Practices Act).
2.  The Clerk is directed to incorporate this Order into the docket by reference pursuant to M.R. Civ. P. 79(a).

Dated: 6/8/2021

Hon. M. Michaela Murphy
Justice, Maine Superior Court

BCD-CIV-2021-17

TRUSTEES OF BERWICK ACADEMY

    *Plaintiff(s)*

*v.*

TOM MAHONEY, et al.

    *Defendant(s)*

| Party Name: | Attorney Name: |
|---|---|
| *Trustees of Berwick Academy* | Joseph Talbot, Esq. <br>     Perkins Thompson, PA <br>     One Canal Plaza Suite 900 <br>     PO Box 426 <br>     Portland, ME 04112-0426 |
| *Heather and Tom Mahoney* | Michael Traister, Esq. <br>     Murray Plumb & Murray <br>     74 Pearl Street <br>     PO Box 9785 <br>     Portland, ME 04104-5085 |