STATE OF MAINE
CUMBERLAND, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-20-0498

ROBERT BATEMAN & LESLIE BATEMAN, )
)
PLAINTIFFS, )
)
)      ORDER ON PLAINTIFFS'
v.                                )      MOTION FOR
)      RECONSIDERATION
COMMONWEALTH LAND TITLE           )
INSURANCE COMPANY,                )
)
DEFENDANT,                        )

REC'D CUMB CLERKS OFC
OCT 7 '21 AM9:05

Before the Court is Plaintiff Robert Bateman and Plaintiff Leslie Bateman's ("Plaintiffs")

Motion for Reconsideration of this Court's Order dated July 23rd, 2021 dismissing their complaint

against Commonwealth Land Title Insurance Company ("Commonwealth") in full. For the reasons

set forth herein, Plaintiffs' Motion for Reconsideration is hereby DENIED.

**FACTUAL BACKGROUND**

The following facts relevant to the Court's consideration of this Motion are taken directly

from this Court's "Order on Defendant's Motion to Dismiss" dated July 23rd, 2021. From 1980

until early 2015, Thomas and Katherine Bateman ("Batemans") owned a parcel of property

located at 18 Quaker Camp Road in Sebago, Maine ("Property"). Plaintiff Robert Bateman is the

natural son of Thomas and Katherine.

In the spring of 2015, after assessing and recording a cumulative total of $56,630.12 in

property tax liens on the Property, the Town of Sebago ("Town") filed a foreclosure complaint in

Cumberland County Superior Court. The Town was granted summary judgment and the title to

1

the Property was subsequently transferred from the Batemans to the Town. In the fall of 2015, the Town then sold the property to the Plaintiffs. That sale was unanimously approved by the Town's Board of Selectmen and was for a total of $300,000. Around the same time that they purchased the property, on November 3rd, 2015, the Plaintiffs obtained a title insurance policy ("Policy") from Commonwealth which contained a maximum coverage amount of $300,000.

Approximately two years after the Town had foreclosed on their property, the Batemans filed a Chapter 11 bankruptcy petition which was later converted to a Chapter 7 proceeding. During the pendency of that Petition, the appointed Chapter 7 trustee initiated an adversary proceeding ("Trustee's Complaint") against the Plaintiffs, seeking to avoid both transfers of the Property. The Trustee alleged that each transfer—from the Bateman's to the Town and from the Town to the Plaintiffs—was either preferential or fraudulent under the applicable provisions of the U.S. Bankruptcy Code and Maine law. The Trustee further alleged that they were the product of a scheme between the Town, the Plaintiffs and and the Batemans to repurchase the property, allowing the Bateman family to maintain the substantial equity it had in the Property at the time of foreclosure. At the time of the sale to the Plaintiffs, the property was worth approximately $1.8 million. The Plaintiffs bought it for a fraction of that cost, $300,000.

Once the adversary proceeding was initiated in the Bankruptcy Court, the Plaintiffs notified Commonwealth that they were facing a claim that threatened their title to the insured property and asked Commonwealth to defend them pursuant to the Policy. Commonwealth refused multiple written requests by the Plaintiffs seeking their assistance, saying that because the claims against the Plaintiffs were premised on the existence of a fraudulent conveyance or transfer, the Trustee's Complaint was excluded from the Policy's coverage provisions.

2

On November 16th, 2020, the Plaintiffs filed a four count complaint in the Cumberland County Superior Court against Commonwealth seeking to establish Commonwealth's Duty to Defend and indemnification for the litigation costs incurred in connection with defending, and ultimately settling, the Chapter 7 Trustee's claims. Along with claims premised on the language of the Policy, the Plaintiffs also asserted that Commonwealth violated applicable state law governing unfair claims settlements and trade practices.

On January 7th, 2021, Commonwealth filed a Motion to Dismiss the Batemans' complaint pursuant to Maine Rule of Civil Procedure ("M.R. Civ. P.") 12(b)(6), asserting that the Batemans were excluded from coverage under their respective policy because a number of the enumerated exceptions to coverage were squarely applicable to the Trustee's claims.

On July 23rd, 2021, this Court entered an order granting Commonwealth's Motion to Dismiss the Plaintiffs' complaint in full. Finding that the Batemans had "failed to state a claim upon which relief could be granted," and "viewing the facts in the light most favorable to the Plaintiffs", the Court held that the Policy's coverage exceptions were squarely applicable to the allegations set forth in the Trustee's Complaint. *See* M.R. Civ. P. 12(b)(6); *Ramsey v. Baxter Title Co.*, 2012 ME 113, ¶ 6, 54 A.3d 710. Additionally, the Court held that the Plaintiffs' failed to state a claim under either Maine's Unfair Claims Settlement Practices Act or Maine's Unfair Trade Practices Act. On August 9th, 2021, the Batemans filed a Motion for Reconsideration of the Court's dismissal, which this Court now considers. The Plaintiffs' Motion does not ask that the Court reconsider its dismissal of the Plaintiffs' claims arising under the Unfair Claims Settlement Act or the Unfair Trade Practices Act.

## DISCUSSION

3

In their Motion for Reconsideration, the Plaintiffs allege two errors by the Court. First, that the Court erred in relying too heavily on the Trustee's Complaint and accepting the Complaint's allegations as true. Second, that the Court erred in not properly considering some of the exhibits attached to the Plaintiffs' complaint.

"Motions for reconsideration of an order shall not be filed unless required to bring to the court's attention an error, omission, or new material that could not previously have been presented." M.R. Civ. P. 7(b)(5). Rule 7(b)(5) is intended to deter disappointed litigants from seeking "to reargue points that were or could have been presented to the court on the underlying motion." *Shaw v. Shaw*, 2003 ME 153, ¶ 8, 839 A.2d 714. The Rule gives the court "more leeway" when responding to motions that are frequently brought to relitigate fully presented and decided issues. *Ten Voters of City of Biddeford v. City of Biddeford*, 2003 ME 59, ¶ 11, 822 A.2d 1196.

## I.   Error in Considering Trustee's Complaint

The Plaintiffs first allege that the Court erred when it "relied heavily on the allegations against [the Plaintiffs] set forth in the Trustee's Complaint, and effectively treated those allegations as true." (Pl.s' Mot. Recons. 2.)

While the Court understands the Plaintiffs' disappointment with the effect of this Court's dismissal of its claims, it fails to see how it could have resolved the Defendant's Motion to Dismiss either against—or in favor of—the Plaintiffs without consideration of the Trustee's Complaint. When determining whether the Duty to Defend is triggered under an insurance policy, Maine law requires the court to look at both the underlying complaint and the language of the policy and *compare* them. *See Barnie's Bar & Grill, Inc. v. United States Liab. Ins. Co.*, 2016 ME 181, ¶ 6, 152 A.3d 613 (To determine whether an insurer is contractually obligated to defend

4

an insured in an underlying lawsuit, Maine courts employ the "comparison test," in which they compare the allegations in the underlying complaint with the terms of the applicable insurance policy to determine whether the complaint falls within the policy's coverage.)

Here, this comparison test involves a comparison between the *allegations* set forth in the Trustee's Complaint and the language of the Policy issued to the Plaintiffs by Commonwealth. This comparison, does not, in any way, reach the merits of the Trustee's Complaint or come to any conclusions about whether the Plaintiffs actually engaged in a preferential or fraudulent transfer scheme. It merely places the underlying complaint and the insurance policy side by side to determine if the complaint alleges facts which entitle the Plaintiffs to coverage.

As the Court concluded in its dismissal order, A side by side comparison of the two clearly fits the Trustee's Complaint within the confines of the Policy's seventh exception to coverage. Importantly, the Policy excludes coverage *regardless* of whether the Trustee's allegations are true.

Accordingly, the Court finds no error in its consideration of the Trustee's Complaint to determine whether the comparison test triggers Commonwealth's Duty to Defend. The Court did not accept the allegations contained in the Trustee's Complaint as true. In accordance with Maine law, it merely compared those allegations with the language of the Policy. That was the extent of the Court's analysis.

## II.    Error in Failing to Rely on Other Exhibits

The Plaintiffs also allege, briefly, that the Court erred by not giving proper weight to any exhibits attached to their complaint, other than the Trustee's Complaint. Specifically, Plaintiffs allege that the Court "should have analyzed such exhibits as supportive of the sufficiency of [Plaintiffs'] Complaint. (Pl.s' Mot. Recons. 4.)

5

Contrary to the Plaintiffs' assertions, the Court did in fact properly analyze the attached exhibits. In fact, consistent with the inquiry this Court is charged with, it reviewed the complaint itself, the exhibits, and all other relevant objections and responses. It carefully examined the language of the Policy, the communications between the Plaintiffs and Commonwealth, the Trustee's Complaint, and every other document relevant to the Court's consideration of the Motion to Dismiss. After this proper analysis, the Court determined that all allegations in the Trustee's Complaint meet at least one of the enumerated exceptions to coverage within the Policy. Thus rendering the Plaintiffs' complaint legally insufficient.

## CONCLUSION

Although the Plaintiffs' do not like the Court's ultimate conclusion, a review of the Court's decision to Dismiss the Plaintiff's complaint finds no error which preceded that decision. The Court did not improperly consider the Trustee's Complaint, or the merits of the Trustee's allegations, nor did it fail to consider other exhibits attached to the Plaintiffs' complaint. For the foregoing reasons, the Plaintiffs' Motion for Reconsideration of this Court's July 23rd, 2021 Order Dismissing the Plaintiffs' complaint is DENIED.

**Entry is:**

Plaintiff's Motion for Reconsideration is DENIED.

The Clerk is directed to incorporate this Order into the docket by reference pursuant to Maine Rule of Civil Procedure 79(a).

Dated: 10/7/21

John O'Neil Jr.
Justice, Superior Court

Entered on the Docket: 10/07/2021                    6

STATE OF MAINE                               SUPERIOR COURT
CUMBERLAND, ss.                              DKT. NO. CV-20-498

ROBERT E. BATEMAN and LESLIE A.     )
BATEMENT,                           )
                                    )
                                    )
        Plaintiffs,                 )
                                    )
v.                                  )        **ORDER ON DEFENDANT'S**
                                    )        **MOTION TO DISMISS**
COMMONWEALTH LAND TITLE             )
INSURANCE COMPANY,                  )
                                    )
        Defendants.                 )

This case involves an alleged breach of a duty to defend by Defendant Commonwealth

Land Title Insurance Company. Pursuant to Rule 12(b)(6), Defendant moves to dismiss all claims

in Plaintiffs Robert and Leslie Batemans' complaint primarily on the basis that the underlying

litigation at issue fell entirely within exclusions to the Policy, meaning Defendant had no duty to

defend.[1] Following review of the complaint in this case, the complaint in the underlying case, the

Policy, the parties' briefs, and the law governing an insurer's duty to defend, the Court issues this

decision.

## LEGAL STANDARD

"A motion to dismiss tests the legal sufficiency of the complaint, the material allegations

of which must be taken as admitted . . . ." *Packgen, Inc. v. Bernstein, Shur, Sawyer & Nelson,*

*P.A.,* 2019 ME 90, ¶ 16, 209 A.3d 116 (citations omitted). A complaint only needs to consist of a

short and plain statement of the claim to provide fair notice of the cause of action. *Johnston v. Me.*

*Energy Recovery Co., Ltd. P'ship,* 2010 ME 52, ¶ 16, 997 A.2d 741. When deciding a motion to

---

[1] Plaintiffs filed a purported motion for summary judgment in response to the motion to dismiss. Defendant contested the purported motion for summary judgment on the basis that it did not comply with the procedural requirements of Rule 56. Plaintiffs conceded as much when they withdrew the purported motion for summary judgment on March 31, 2021.

RECD CUMB CLERKS OFC
[illegible]

1

dismiss pursuant to Rule 12(b)(6), the complaint is viewed "in the light most favorable to the plaintiff to determine whether it sets forth elements of a cause of action or alleges facts that would entitle the plaintiff to relief pursuant to some legal theory." *Ramsey v. Baxter Title Co.*, 2012 ME 113, ¶ 6, 54 A.3d 710 (quotation marks omitted). "A dismissal is only proper when it appears beyond doubt that [the] plaintiff is entitled to no relief under any set of facts that [it] might prove in support of [its] claim." *Packgen*, 2019 ME 90, ¶ 16, 209 A.3d 116 (alterations in original).

## ALLEGATIONS

Generally, a court is confined to the allegations in the complaint and may not consider extraneous information without converting a motion to dismiss into one for summary judgment. *See* M.R. Civ. P. 12(b). However, the Court can consider "official public documents, documents that are central to the plaintiff's claim, and documents referred to in the complaint . . . when the authenticity of such documents is not challenged." *Moody v. State Liquor & Lottery Comm'n*, 2004 ME 20, ¶ 11, 843 A.2d 43. When the Court does consider such documents, those documents merge into the pleadings. *Id.* ¶ 10. In this case, the Policy (hereinafter the "Policy," and attached to Plaintiffs' complaint as Exhibit A) and the underlying complaint (hereinafter the "Bankr. Compl." in citations and attached to Plaintiffs' complaint as Exhibit C) fit the *Moody* exception and the Court considers them as such.

*Chronology*

Plaintiffs are the owners of real property located at 18 Quaker Camp Road in Sebago.[2] (Pl.s' Compl. ¶ 2.) Thomas and Katherine Bateman, previous owners of the property, purchased and took title to 18 Quaker Camp Road in 1980. (Bankr. Compl. ¶ 5.) Though there were no recorded mortgages on the property from and after 2004, the Town of Sebago (the "Town")

---

[2] Plaintiffs are the son and daughter-in-law of Thomas and Katherine Bateman. (Bankr. Compl. ¶ 7.)

2

recorded tax lien certificates against the property in the Cumberland County Registry of Deeds in 2011, 2012, and 2013 totaling $56,630.12.[3] (Bankr. Compl. ¶¶ 8-11, 13.) Then, in 2015, the Town filed suit in the Cumberland County Superior Court against Thomas and Katherine Bateman regarding the tax lien certificates. (Pl.s' Compl. ¶ 8; Bankr. Compl. ¶ 12.) The Town pursued a motion for summary judgment in the case that was granted. (Pl.s' Compl. ¶ 9; Bankr. Compl. ¶¶ 14-17.) On July 23, 2015, the Town recorded the Superior Court's order granting summary judgment in the Cumberland County Registry of Deeds. (Pl.s' Compl. ¶ 10; Bankr. Compl. ¶ 19.)

After consideration within the Town through the Board of Selectmen in the fall of 2015, the parties reached a deal whereby the Town would sell 18 Quaker Camp Road to Plaintiffs for $300,000. (Pl.s' Compl. ¶ 11; Bankr. Compl. ¶ 20-22.) The property was assessed for tax purposes at $1,358,610 at the time the parties reached the deal to sell the property to Plaintiffs. (Bankr. Compl. ¶ 22.) In order to complete the conveyance to Plaintiffs in 2015, Thomas and Katherine executed a quitclaim deed to Plaintiffs on September 25 and the Town executed a municipal release deed on October 28, each of which was duly recorded in the Cumberland County Registry of Deeds. (Pl.s' Compl. ¶¶ 12, 14; Bankr. Compl. ¶ 23(i)-(ii).) As part of their acquisition of the property, Plaintiffs obtained on November 3, 2015, a title insurance policy with Defendant up to a maximum amount of $300,000. (Pl.s' Compl. ¶ 13.)

A few years later, on April 5, 2017, Thomas and Katherine Bateman filed a voluntary petition for Chapter 11 bankruptcy; the petition was later converted to a case under Chapter 7. (Pl.s' Compl. ¶¶ 16-17; Bankr. Compl. ¶¶ 28, 31.) On January 2, 2019, as part of the bankruptcy case, the Trustee filed an adversary proceeding against Plaintiffs and the Town in which he sought "to recover . . . , for the benefit of the bankruptcy estate, real estate of the Debtors, or the value

---

[3] Katherine Bateman's name did not appear on any of the three certificates. (Bankr. Compl. ¶¶ 9-11.)

3

thereof, transferred to [Plaintiffs and the Town]." (Pl.s' Compl. ¶ 22; Bankr. Compl. 1.) The Trustee alleged generally that "[t]he initial alleged transfer was made pursuant to a real estate tax lien enforcement proceeding by the Town of Sebago. The Town of Sebago and the Debtors then purportedly transferred the same real estate by deeds to insiders of the Debtors, the Debtors' son, Robert E. Bateman and daughter-in-law, Leslie A. Bateman . . . ." (Bankr. Compl. 1.) He filed the case "pursuant to 11 U.S.C. §§ 548, 544 and 550 and M.G.L. c. 109A, §1, et. Seq (Massachusetts Fraudulent transfer statute) and/or 14 M.R.S.A. §3571, et. seq. (Maine Fraudulent transfer statute) . . . ." (Bankr. Compl. 1.)

Citing the provisions of the federal bankruptcy law regarding fraudulent transfers and liability of subsequent transferees, Count I of the bankruptcy complaint sought to avoid the July 23, 2015 transfer to the Town pursuant to the Superior Court's summary judgment order. (Bankr. Compl. ¶¶ 54-63.) Count II sought to avoid the July 23, 2015 transfer pursuant to the Maine and/or Massachusetts fraudulent transfer statutes as well as pursue subsequent transferee liability against Plaintiffs. (Bankr. Compl. ¶¶ 64-72.) Count III, pursuant again to the federal bankruptcy statutes regarding fraudulent transfers and liability of subsequent transferees, sought to avoid the September 25, 2015 quitclaim deed to Plaintiffs from Thomas and Katherine Bateman and/or the October 28, 2015 municipal release deed from the Town. (Bankr. Compl. ¶¶ 73-80.) Count IV sought to avoid the September 25, 2015 quitclaim deed to Plaintiffs from Thomas and Katherine Bateman and/or the October 28, 2015 municipal release deed from the Town pursuant to the Maine and/or Massachusetts fraudulent transfer statutes. (Bankr. Compl. ¶¶ 81-91.) Finally, in Count V, the Trustee sought injunctive relief on the basis that he was likely to succeed on the merits of the adversary proceeding (i.e., the other claims in the bankruptcy complaint). (Bankr. Compl. ¶¶ 92-99.)

4

On December 27, 2018, Plaintiffs notified Defendant of the Trustee's claims against their title to 18 Quaker Camp Road and demanded that Defendant pay the costs of the defense and any settlement.[4] (Pl.s' Compl. ¶ 19.) Defendant responded on January 17, 2019 and stated that it was denying coverage outright without a reservation of rights. (Pl.s' Compl. ¶ 25.) Plaintiffs continued to seek coverage under their title insurance policy with Defendant by sending letters on April 29 and October 24, 2019. (Pl.s' Compl. ¶¶ 28, 34.) Defendant, however, continued to deny coverage. (Pl.s' Compl. ¶¶ 33, 39, 41.) Eventually, on December 9, 2019, Plaintiffs settled with the Trustee for $100,000 and on January 3, 2020, the Bankruptcy Court approved the settlement. (Pl.s' Compl. ¶ 43.)

Thereafter, Plaintiffs filed this case against Defendant. Plaintiffs seek a declaration regarding the parties' rights and responsibilities under the title insurance policy (Count I). They further contend that Defendant breached the contract of insurance by failing to defend the adversary proceeding against Plaintiffs (Count II). Moreover, Plaintiffs contend that Defendant violated 24-A M.R.S. § 2436-A (the Unfair Claims Settlement Practices Act) (Count III). Lastly, Plaintiffs assert that Defendant engaged in an unfair or deceptive trade practice under 5 M.R.S. §§ 205-A to 214 (the Unfair Trade Practices Act) (Count IV).

*The Policy Basics*

Plaintiffs' November 3, 2015 title insurance policy with Defendant insured them "against actual loss, including any costs, attorneys' fees and expenses provided under this Policy." (Policy 3.) The loss had to "result from one or more of the Covered Risks," and it covered "actual loss from any risk described under Covered Risks if the event creating the risk exist[ed] on the Policy

---

[4] Prior to filing the adversary proceeding, the Trustee had sent a letter to Plaintiffs on December 26, 2018, regarding his claims on behalf of the bankruptcy estate. (Pl.s' Compl. ¶ 18.) The day after the Trustee filed the complaint, Plaintiffs reiterated to Defendant their demand that Defendant provide them a defense. (Pl.s' Compl. ¶ 23.)

Date or, to the extent expressly stated in Covered Risks, after the Policy Date." (Policy 3.) Coverage under the Policy was "limited by," in pertinent part, Defendant's "Duty to Defend Against Legal Actions" and the "Exclusions on page 7 . . . ." (Policy 3.) The "Duty to Defend Legal Actions" stated that Defendant would

> defend Your Title[5] in any legal action only as to that part of the action which is based on a Covered Risk and which is not excepted or excluded from coverage. We will pay the costs, attorneys' fees, and expenses We incur in that defense. We will not pay for any part of the legal action which is not based on a Covered Risk or which is excepted or excluded from coverage in this Policy.

(Policy 6.)

## DISCUSSION

1. The Duty to Defend Issue (Counts I and II).

Whether an insurer has a duty to defend – a broader duty than the duty to indemnify – is a question of law. *Mitchell v. Allstate Ins. Co.*, 2011 ME 133, ¶ 10, 36 A.3d 876; *Elliott v. Hanover Ins. Co.*, 1998 ME 138, ¶ 6, 711 A.2d 1310. To make this determination the Court must "compare the allegations of the underlying complaint with the coverage provided in the insurance policy." *Mitchell*, 2011 ME 133, ¶ 9, 36 A.3d 876. Even if the broad comparison of the underlying complaint and the Policy reveals the "mere *potential* that the facts may come within the coverage, then the duty to defend exists." *Howe v. MMG Ins. Co.*, 2014 ME 78, ¶ 10, 95 A.3d 79 (quotation marks omitted). An insured "is entitled to a defense if there exists any legal or factual basis, which

---

[5] "Title" is defined in the policy as "the ownership of Your interest in the Land, as shown in Schedule A"; "land" is defined as "the land . . . described in paragraph 3 of Schedule A"; paragraph 3 of Schedule A states the address at 18 Quaker Camp Road and incorporates "Exhibit A"; and "Exhibit A" includes the apparent legal description of the property Plaintiffs received from Thomas and Katherine Bateman in the September 25, 2015 quitclaim deed, including a "reference . . . to Order of the Superior Court, State of Maine, Cumberland County dated May 5, 2015 and recorded in the Cumberland County Registry of Deeds in Book 32453, Page 65, in which fee simple title in 18 Quaker Camp Road, Sebago, Maine (Map 31, Lot 32) was found to rest in the Town of Sebago, Maine." (Policy 8, Schedule 8 ¶ 3, Exhibit A; Pl.s' Compl. ¶ 15.)

6

could be developed at trial, that would obligate the insurers to pay under the policy." *L. Ray Packing Co. v. Commercial Union Ins. Co.*, 469 A.2d 832, 833 (Me. 1983). "[T]he allegations of the underlying complaint are construed liberally and any doubt is resolved in favor of the insured . . . ." *Id.*; *see Irving Oil, Ltd. v. ACE INA Ins.*, 2014 ME 62, ¶ 13, 91 A.3d 594 (noting that "*any* ambiguity in the policy regarding the insurer's duty to defend is resolved against the insurer"). The Law Court has made clear that the "facts alleged in the complaint need not make out a claim that specifically and unequivocally falls within the coverage. Rather, where the events giving rise to the complaint may be shown at trial to fall within the policy's coverage, an insurer must provide the policyholder with a defense." *Mitchell*, 2011 ME 133, ¶ 10, 36 A.3d 876 (citations and quotation marks omitted). At the same time, however, the Law Court has also explained that the duty to defend is not triggered when the allegations of the complaint fall wholly within a policy exclusion.[6] *Id.* ¶ 13.

Defendant points to several policy exclusions it contends unambiguously provide that it had no duty to defend the bankruptcy Trustee's adversary proceeding. The primary exclusion pointed to by Defendant is exclusion 7, which excludes coverage for "loss, costs, attorneys' fees, and expenses resulting from" circumstances in which "[t]he transfer of Title to You is invalid as a preferential transfer or as a fraudulent transfer or conveyance under federal bankruptcy, state insolvency, or similar creditors' rights laws." (Policy 7 ¶ 7.) Because the Trustee's entire

---

[6] Plaintiffs use part of their opposing brief to highlight the covered risks in the policy under which the Trustee's adversary proceeding fell, though they concede that Defendant was required to defend the action "unless the Policy specifically and unambiguously excludes coverage . . . ." (Opp. Mot. Dismiss 5.) For that reason, the Court looks to whether the allegations of the complaint fell wholly within a policy exclusion. *Cf. Mitchell v. Allstate Ins. Co.*, 2011 ME 133, ¶ 20, 36 A.3d 876 (citation omitted) ("Because Ames could potentially establish a conversion resulting in property damage without proving that Mitchell intended to damage Ames's property, Ames's conversion claim could result in covered liability. The policy's intentional acts exclusion would not apply if the evidence showed that Mitchell lacked an intention or expectation that property belonging to Ames would be damaged.").

complaint in the adversary proceeding was asserting allegations in order to invalidate transfers of 18 Quaker Camp Road to Plaintiffs for the benefit of the bankruptcy estate, Defendant argues, the Policy exclusion wholly applies to the entire adversary proceeding. Defendant makes a fair point.

The Trustee's complaint is rife with allegations that the tax lien litigation which resulted in the Superior Court order vesting title in the Town "was the result of a scheme by the Debtors, Robert and Leslie and the Town of Sebago to allow the Maine Property to be acquired by the Town of Sebago for unpaid taxes so that the Maine Property and the substantial equity therein, could then be acquired by the insiders Robert and Leslie." (Bankr. Compl. ¶ 56; *see also* Bankr. Compl. ¶¶ 60, 66 ("collusion"), 63, 72 ("Robert and Leslie . . . are, at best, immediate transferees who have not acted in good faith").) Further, the Trustee alleged that the September 25, 2015 quitclaim deed from Thomas and Katherine to Plaintiffs and/or the October 28, 2015 municipal release deed from the Town to Plaintiffs were/was "the result of a scheme by the Debtors, Robert and Leslie and the Town of Sebago to allow the Maine Property to be acquired by the Town of Sebago for unpaid taxes so that the Maine Property and the substantial equity therein, could then be acquired by the insiders Robert and Leslie." (Bankr. Compl. ¶ 75; *see also* Bankr. Compl. ¶¶ 76, 83 ("collusion"), 80, 91 ("Robert and Leslie . . . are, at best, immediate transferees who have not acted in good faith").)

As Defendant frames it, "in the instant case, all of the Plaintiffs' claims are premised upon the assertion that Commonwealth had a duty to defend the Plaintiffs against the fraudulent transfer claims asserted by the Bankruptcy Trustee." (Mot. Dismiss 8.) Thus, according to Defendant, exclusion 7 is entirely on point meaning Defendant had no duty to defend Plaintiffs against the Trustee's complaint. Plaintiffs counter this argument by asserting that it was possible for the Trustee to succeed – and accordingly cause a loss to Plaintiffs – without any proof of wrongdoing

8

on the part of Plaintiffs. Quoting from Plaintiffs' brief to highlight the argument, Plaintiffs assert that,

> [i]n Count II, the Trustee alleged that Debtors transferred to [sic] the Property to the Town "without receiving a reasonably equivalent value in exchange." In Count II, the Trustee goes on to allege that to "the extent [Plaintiffs] are determined to be subsequent transferees" of the Debtors' transfer to the Town, from who[m] the Trustee may also recover. Therefore, it was entirely possible and plausible that the Trustee could prove his constructive fraudulent transfer claims at trial solely against the Town without regard to [Plaintiffs], but with the result that [Plaintiffs] would have suffered the loss of the Property title by virtue of the transfer of that title to the Town being invalidated under bankruptcy and creditors' rights laws. [Plaintiffs,] acting in good faith and without knowledge of the Town's or the Debtor's [sic] actions, could have lost their title in the Property solely by the Trustee's claims against the Town.

(Opp. Mot. Dismiss 7-8 (citations omitted).)

There is some appeal to this argument on its face. Nonetheless, it is clear that several policy exclusions would still apply and exclude coverage even in Plaintiffs' hypothetical factual scenario. Plaintiffs' assertion that they could have lost their title in 18 Quaker Camp Road solely by the Trustee's claims against the Town is not correct when the scenario is fully played out. Even if the Trustee succeeded on invaliding the transfer from Thomas and Katherine Bateman to the Town that was recorded on July 23, 2015 (i.e., the Superior Court's summary judgment order confirming title in the Town by way of the tax lien case), that would only place the property back in the hands of Thomas and Katherine Bateman as of that date (setting aside subsequent transferee issues).

Undisputedly, however, Thomas and Katherine Bateman executed a quitclaim deed to Plaintiffs on September 25, 2015. (Pl.s' Compl. ¶¶ 14-15; Bankr. Compl. ¶ 23(ii).) In other words, invalidation of the transfer from Thomas and Katherine Bateman to the Town was a risk excluded by the Policy because it would "result in no loss to" Plaintiffs due to them still being vested with

9

title from the quitclaim deed. (Policy 7 ¶ 4(c).) The only way the Trustee's action would result in a loss to Plaintiffs would be from succeeding in proving the collusive scheme amongst the parties he alleged, which was a risk that was "created, allowed, or agreed to by [Plaintiffs], whether or not they are recorded in the Public Records . . . ." (Policy 7 ¶ 4(a).) Proof of this would mean that "transfer of the Title to [Plaintiffs was] invalid as a preferential transfer or as a fraudulent transfer or conveyance under federal bankruptcy, state insolvency, or similar creditors' rights laws." (Policy 7 ¶ 7.) Accordingly, Defendant did not have a duty to defend the Trustee's adversary proceeding because it fell entirely within exclusions to the Policy.

2. The Unfair Claims Settlement Practices Act and Unfair Trade Practices Act Claims (Counts III and IV).

The Unfair Claims Settlement Practices Act permits suit by an insured against an insurer if the insurer "[k]nowingly misrepresent[s] to an insured pertinent facts or policy provisions relating to coverage at issue;" "[f]ail[s] to acknowledge and review claims, which may include payment or denial of a claim, within a reasonable time following receipt of written notice by the insurer of a claim by an insured arising under a policy;" "[f]ail[s] to affirm or deny coverage, reserving any appropriate defenses, within a reasonable time after having completed its investigation related to a claim;" or "[w]ithout just cause, fail[s] to effectuate prompt, fair and equitable settlement of claims submitted in which liability has become reasonably clear." 24-A M.R.S. § 2436-A(A), (B), (D), (E). Plaintiffs' claim under the Unfair Claims Settlement Practices Act effectively boils down to their contention that Defendant had a duty to defend.

The complaint and accompanying documents contain no allegations that would amount to knowing representations of pertinent facts or policy provisions relating to the Policy with Defendant. *Cf. Curtis v. Allstate Ins. Co.*, 2002 ME 9, ¶ 24, 787 A.2d 760 (in the context of summary judgment, noting that "[t]o establish a knowing misrepresentation, a plaintiff must

10

provide evidence demonstrating something more than a mere dispute between the insurer and insured as to the meaning of certain policy language").

Moreover, Plaintiffs initially demanded coverage on December 27, 2018, while Defendant responded with a denial of coverage on January 17, 2019. (Pl.s' Compl. ¶¶ 19, 25.) Defendant received written notice on January 3, 2019, at the absolute latest. (Pl.s' Compl. ¶ 23.) Though section 2436-A does not itself establish what constitutes a "reasonable time" to "acknowledge and review claims, which may include payment or denial of a claim," it is worthwhile to note that the Legislature has prescribed thirty days to insurers to pay undisputed claims or request information. 24-A M.R.S. § 2436(1). An insurer may also dispute a claim within that thirty-day window. *Id.* § 2436(1), (2). As a matter of law, at least fourteen days and at most seventeen days was a reasonable amount of time for Defendant to deny coverage. *Compare Curtis*, 2002 ME 9, ¶¶ 28-29, 787 A.2d 760 (finding up to eight days reasonable), *with Perry v. Neth. Ins. Co.*, No. BCD-CV-15-39, 2016 Me. Bus. & Consumer LEXIS 22, at *21-23 (June 3, 2016) (concluding that a reasonable juror could find at least six months to be unreasonable). The same rationale applies to Plaintiffs' claim under section 2436-A(1)(D).

As it pertains to Plaintiffs' section 2436-A(1)(E) claim, "an insurer acts without just cause if it refuses to settle claims without a reasonable basis to contest liability, the amount of any damages or the extent of any injuries claimed." 24-A M.R.S. § 2436-A(2). As the Court concluded above, Defendant had a reasonable basis to contest liability because it did not have a duty to defend. Therefore, as a matter of law, it did not act without just cause. Plaintiffs' Unfair Claims Settlement Practices Act claim fails to state a claim as a matter of law and must be dismissed.

Finally, the Unfair Trade Practices Act provides a private right of action for a consumer who (1) purchased goods, services or property (2) primarily for personal or family use and (3)

11

suffered a monetary or property loss (4) caused by (5) an unfair or deceptive trade practice. *See* 5 M.R.S. § 213(1); *see also id.* § 207 ("Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are declared unlawful."). It "provides protection for consumers against unfair and deceptive trade practices." *State v. Weinschenk*, 2005 ME 28, ¶ 11, 868 A.2d 200. "To justify a finding of unfairness, the act or practice: (1) must cause, or be likely to cause, substantial injury to consumers; (2) that is not reasonably avoidable by consumers; and (3) that is not outweighed by any countervailing benefits to consumers or competition." *Id.* ¶ 16. "An act or practice is deceptive if it is a material representation, omission, act or practice that is likely to mislead consumers acting reasonably under the circumstances," and "[a]n act or practice may be deceptive . . . regardless of a defendant's good faith or lack of intent to deceive." *Id.* ¶ 17 (citations omitted). Proper denial of coverage cannot be an unfair trade practice. *See Legal Sea Foods, LLC v. Strathmore Ins. Co.*, No. 20-10850-NMG, 2021 U.S. Dist. LEXIS 43097, at *13-14 (D. Mass. Mar. 5, 2021) (under Massachusetts' comparable Unfair Trade Practices Act, "[w]hen coverage has been correctly denied . . . no violation of the Massachusetts statutes proscribing unfair or deceptive trade practices may be found"). There is no reason why Maine's should be viewed any differently. This claim must also be dismissed.

## CONCLUSION

As the Court has detailed, Defendant did not have a duty to defend the underlying litigation. Nor did Defendant violate the Unfair Claims Settlement Practices Act or the Unfair Trade Practices Act. Plaintiffs' complaint fails to state any claim as a matter of law and must be dismissed.

The entry is:

1. Defendant Commonwealth Land Title Insurance Company's motion to dismiss Plaintiffs Robert and Leslie Batemans' complaint is **GRANTED**. Plaintiffs' claims are dismissed.
2. The Clerk is directed to incorporate this Order into the docket by reference pursuant to M.R. Civ. P. 79(a).

Dated: 7/23/21

Hon. John H. O'Neil, Jr.
**Justice, Maine Superior Court**

13